ELLEN F. ROSENBLUM
Attorney General
MARC ABRAMS  #890149
Assistant Attorney-in-Charge
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  marc.abrams@doj.state.or.us

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAUL THOMAS, MD,

        Plaintiff,

    v.

KATHLEEN HARDER, SAURABH GUPTA,
ERIN CRAMER, ROBERT CAHN, JAMES
LACE, CHARLOTTE LIN, PATTI LOUIE,
JENNIFER LYONS, ALI MAGEEHON,
CHERE PEREIRA, CHRIS POULSEN,
ANDREW SCHINK, JILL SHAW,
ANTHONY DOMENIGONI, PAULA LEE-
VALKOV, RICK GOLDSTEIN, ERIC
BROWN, JASON BOEMMELS, DAVID
FARRIS,

        Defendants.

Case No.  3:22-cv-00944-JR

**MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

**MOTION TO DISMISS** ................................................................................................ 1

**INTRODUCTION** ........................................................................................................ 2

**LEGAL STANDARD** ................................................................................................ 3

**FACTS** ........................................................................................................................ 4

**ARGUMENT** .............................................................................................................. 5

   I. Defendants are entitled to absolute immunity. ...................................................... 5

   II. Plaintiff's free speech claim is not actionable........................................................ 9

     A. States can regulate professional conduct that incidentally burdens speech. .................. 10

     B. Plaintiff's alleged speech and the suspension are not temporally proximate................. 13

     C. OMB's emergency order can meet any level of scrutiny................................................ 14

   III. Plaintiff's right to procedural due process has not been violated. ..................................... 15

   IV. Alternatively, defendants are entitled to qualified immunity. ........................................... 19

   V. The State law claims should be dismissed or the defendants substituted. ......................... 21

     A. The defendants are immune from state law claims........................................................ 21

     B. The Eleventh Amendment bars maintenance of these claims........................................ 21

**CONCLUSION** ........................................................................................................ 23

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# TABLE OF AUTHORITIES

Cases

*Adusumilli v. City of Chicago,* 164 F.3d 353 (7th Cir.1998) ........................................................ 14

*Anderson v. Creighton*, 483 U.S. 635 (1987) ............................................................................... 19

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................................... 3

*Atascadero State Hospital v. Scanlon*, 473 U.S. 234 (1985) ........................................................ 22

*Bell v. Clackamas County*, 341 F.3d 858 (9th Cir. 2003) ............................................................ 13

*Bergin v. McCall*, 2007 WL 2344924 at *4 (D. Or. 2007) ............................................................ 6

*Bernsten v. Dollar Tree Stores, Inc.* 2007 WL 756744 (D. Or. 2007) ........................................ 14

*Bettencourt v. Board of Registration in Medicine*, 904 F.2d 774 (1st Cir. 1990) ......................... 8

*Brewster v. Board of Educ. Of Lynwood Unified Sch. Dist.*, 149 F.3d 971 (9th Cir. 1998) ......... 15

*Brosseau v. Haugen*, 543 U.S. 194 (2004) ................................................................................... 19

*Brunick v. Clatsop County*, 204 Or. App. 326 (2006) .................................................................. 14

*Butz v. Economou*, 438 U.S. 478 (1978) ................................................................................... 7, 9

*California ex rel. Lockyer v. FERC*, 329 F.3d 700 (9th Cir. 2003) .............................................. 15

*Clark County School District v. Breeden*, 532 U.S. 268, 121 S. Ct. 1508 (2001) ....................... 13

*Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390 (10th Cir. 1997) ............................................. 14

*Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003) ........................................................... 13

*Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499 (7th Cir.1998) ............................................... 14

*Doyle v. Hogan*, 411 F. Supp. 3d 337 (D. Md. 2019) .................................................................. 11

*Edelman v. Jordan*, 415 U.S. 651 (1974) ................................................................................... 22

*Ex parte Young,* 209 U.S. 123 (1908) .......................................................................................... 19

*Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230 .......................................................................... 15

Page ii

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Filipovic v. K&R Express Systems, Inc.*, 176 F.3d 390 (7th Cir. 1999)...........................................14

*Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 429 (1945) ........................................................21

*Franceschi v. Schwartz*, 57 F.3d 828 (9th Cir. 1995) ..................................................................22

*Gambee II*, 2011 WL 1311782 (D. Or. April 1, 2011) ..........................................................6, 7, 8, 9

*Gambee v. Williams*, 971 F. Supp. 474 (D. Or. 1997) ...............................................................6, 9

*Gilbert v. Homar*, 520 U.S. 924 (1997) .................................................................................15, 16

*Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975) ...................................................................10

*Gonzales v. Carhart*, 550 U.S. 124 (2007) ...................................................................................10

*Harlow v. Fitzgerald,* 457 U.S. 800, 102 S. Ct. 2727 (1982) ....................................................3, 19

*Hughes v. Derwinski*, 967 F.2d 1168 (7th Cir. 1992) ....................................................................14

*Hunter v. Bryant*, 502 U.S. 224 (1991)........................................................................................20

*Imbler v. Pachtman*, 424 U.S. 409 (1976) ......................................................................................5

*Imbler v. Pachtman*, 424 U.S. 409 (1976) ....................................................................................19

*Jarlstrom v. Aldridge*, 366 F. Supp. 3d 1205 (D. Or. 2018) .........................................................10

*Kentucky v. Graham*, 473 U.S. 159 (1985) ...................................................................................19

*LaTulippe v. Harder*, 2021 WL 5530945 (D. Or. Nov. 23, 2021)...................................................8

*Levine v. Diamamthuset, Inc.*, 950 F.2d 1478 (9th Cir. 1991)........................................................3

*Loudermill v. Cleveland Board of Education*, 470 U.S. 532 (1985) .......................................16, 17

*Matthews v. Eldridge*, 424 U.S. 319, 96. S.Ct. 893 (1976) ..........................................................16

*MGIC Indem. Corp. v. Weisman,* 803 F.2d 500 (9th Cir. 1986).....................................................3

*Micomonaco v. State of Washington*, 45 F.3d 316 (9th Cir. 1995)...............................................22

*Mishler v. Clift*, 191 F.3d 998 (9th Cir. 1999) .......................................................................6, 8, 9

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ....................................................................................19

Page iii

*Monroe v. Pape*, 365 U.S. 167 (1961) ........................................................................... 19

*Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593 (1972) .............................................. 15

*Nat'l Inst. of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) ................. 10, 11, 12

*O'Neal v. Ferguson Contr. Co.*, 237 F.3d 1248 (10th Cir. 2001).................................. 13

*Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916 (9th Cir. 2004)................................. 5, 7, 8, 9

*Pearson v. Callahan*, 129 S. Ct. 808 (2009) ................................................................. 20

*Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89 (1984) ................................ 21, 22

*Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014) ...................................................... 11, 13

*Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992) ............ 11, 13

*Read v. Haley*, 2013 WL 1562938 (D. Or. Apr. 10, 2013) .......................................... 21

*Richmond v. ONEOK, Inc.*, 120 F.3d 205 (10th Cir. 1997)......................................... 14

*Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530 (9th Cir. 1984)....................... 3

*Saucier v. Katz*, 533 U.S. 194 (2001) ........................................................................ 20

*Scheuer v. Rhodes*, 416 U.S. (1974) ......................................................................... 19

*Sun Savings & Loan Ass'n v. Dierdorff,* 825 F.2d 187 (9th Cir. 1987) ......................... 3

*Tanasse v. City of St. George,* 172 F.3d 63 (10th Cir. 1999)..................................... 16, 17

*Thomas v. Fred Meyer Jewelry, Inc.*, 2005 WL 1502644 (D. Or. June 23, 2005) ...................... 14

*United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) ................................. 22

*Villarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002)........................... 13

*Watson v. State of Maryland*, 218 U.S. 173 (1910) ....................................................... 10

*Yoonessi v. Albany Med. Center*, 352 F. Supp. 2d 1096 (C.D. Cal. 2005) ....................... 6

## Statutes

ORS 183.310 ..................................................................................................... 9, 17, 18

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ORS 183.411 ................................................................................................................ 17

ORS 183.430 ................................................................................................................ 18

ORS 183.450 ................................................................................................................ 17

ORS 183.460 ................................................................................................................ 17

ORS 183.464 ................................................................................................................ 17

ORS 183.480 ................................................................................................................ 17

ORS 183.482 ............................................................................................................ 17, 18

ORS 183.500 ................................................................................................................ 17

ORS 183.630 ................................................................................................................ 17

ORS 183.635 ................................................................................................................ 17

ORS 30.265 ............................................................................................................. 22, 23

ORS 677.188 ................................................................................................................ 18

ORS 677.190 .................................................................................................................. 8

ORS 677.200 ............................................................................................................. 8, 18

ORS 677.205 ............................................................................................................. 8, 18

ORS 677.335 ................................................................................................................ 21

## United States Code

42 U.S.C. § 1983 ............................................................................................................ 6

## Other Authorities

Order of Emergency Suspension ................................................................... 9, 12, 14, 21

Oregon Administrative Procedures Act ........................................................................ 17

Oregon Tort Claims Act................................................................................................ 22

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Rules and Regulations

Fed. R. Civ. P. 12 ................................................................................................................... 1

OAR 137-003-0560 ............................................................................................................. 18

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## LOCAL RULE 7-1 CERTIFICATION

Counsel for Kathleen Harder, Saurabh Gupta, Erin Cramer, Robert Cahn, James Lace, Charlotte Lin, Patti Louie, Jennifer Lyons, Ali Mageehon, Chere Pereira, Chris Poulsen, Andrew Schink, Jill Shaw, Anthony Domenigoni, Paula Lee-Valkov, Rick Goldstein, Eric Brown, Jason Boemmels and David Farris (together "Defendants") certifies that, in accordance with LR 7-1, he conferred with Steven Joncus, counsel for plaintiff on July 7 and 10, 2022 on the following motion but that the parties were unable to resolve the issues presented in this motion.

## MOTION TO DISMISS

Plaintiff, a pediatrician, brings this lawsuit because he was suspended by the Oregon Medical Board ("OMB") for improper medical practices. Plaintiff claims the OMB was retaliating for his speaking out skeptically about vaccinations and the recommended vaccination schedule for children. Plaintiff also alleges a violation of his procedural due process rights because he was not given an immediate hearing. Plaintiff also raised numerous state law claims.

Defendants move to dismiss. This motion is based upon the following issues:

(1) The OMB and its employees have absolute judicial immunity;

(2) The First Amendment claim is based entirely on a speculative linkage between plaintiff's publishing of a book and the OMB's actions years later, thereby flunking the test for temporal proximity;

(3) The due process claim fails as a matter of law because plaintiff is not entitled to the level of process he asserts;

(4) The defendants are, regardless, entitled to qualified immunity; and

(5) The state law claims may not be maintained in federal court (or, in the alternative, the State should be substituted for the individual defendants).

This motion is brought pursuant to Fed. R. Civ. P. 12(b)(6) and is supported by the following *Memorandum in Support of Defendants' Motion to Dismiss*.

Page 1 -    **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

## INTRODUCTION

Plaintiff, Paul Thomas, is a doctor suspended by the Oregon Medical Board for his actions in treating patients.  Plaintiff holds the belief that the series of vaccinations recommended for children by the Centers for Disease Control ("CDC") are not only not helpful, but cause harm to the children, including potentially higher risks for autism.  He believes this despite the overwhelming majority of medical opinion, including the opinions of the CDC and the Oregon Medical Board ("OMB").  It is the authority and right of the OMB to right to regulate acceptable conduct both in the public and for the medical profession.  Accordingly, when plaintiff's record of treatment demonstrated a lack of best medical practices, OMB in 2020 suspended plaintiff's license for roughly one half a year.

Plaintiff now brings suit, alleging violations of his First and Fourteenth Amendment rights, and for various state law violations.  Specifically, plaintiff claims he was retaliated against in violation of his free speech when he published a book in 2016 alleging vaccinations cause more harm than good.  He also asserts he was not granted sufficient procedural due process in the suspension procedure.  Plaintiff also asserts state law claims for negligence, defamation, interference with economic relations, "vicarious liability," abuse of process and negligence *per se*.

Plaintiff's First Amendment claim is without factual foundation, even as alleged.  He provides nothing but his own conclusory assertions that his writings are related to the actions of the OMB, which occur several years after publication, thereby not being sufficiently close in time to support any inference of linkage.

Plaintiff also suggests that the OMB did not follow the proper process to suspend his medical license.  However, what plaintiff alleges was the process due him is simply incorrect under the law.  As set forth in the Complaint, there is no due process violation.

Plaintiff's state law claims are not, contrary to plaintiff's assertion, properly before this Court.  Under the Eleventh Amendment, there is no pendent jurisdiction for state law claims against the State, and the defendants are the State for such purposes.

Page 2 -   **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

This Court need not reach any of these issues, however, because the case should be disposed of on the grounds of absolute judicial immunity, as has been established in this venue for decades and as was only months ago reaffirmed as to federal claims, and have state law absolute immunity by statute.  Defendants are, alternatively, entitled to qualified immunity.

## LEGAL STANDARD

The Court's review is limited to the face of the complaint, documents referenced by the complaint and matters of which the court may take judicial notice. *Levine v. Diamamthuset, Inc*., 950 F.2d 1478, 1483 (9th Cir. 1991); *In re Stac Elecs. Sec. Litig*., 89 F.3d 1399, 1405 n.4 (9th Cir. 1996)*; MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir. 1986)*.*  A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A J. Moore, Moore's Fed. Practice ¶12.08 at 2271 (2[d] ed. 1982)).  When a court considers a motion to dismiss, all allegations of the complaint are construed in the plaintiff's favor. *Sun Savings & Loan Ass'n v. Dierdorff,* 825 F.2d 187, 191 (9th Cir. 1987).

While the Court may accept all "well-pleaded" factual allegations, it should ignore legal conclusions.  Bare allegations that a government official, "knew of, condoned, and willfully and maliciously agreed" to violate a plaintiff's constitutional rights for improper purpose are not entitled to the assumption of truth.  *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1951 (2009); *Harlow v. Fitzgerald,* 457 U.S. 800, 817-818, 102 S. Ct. 2727 (1982) (bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery).  It is the conclusory nature of the allegations that "disentitles them to the presumption of truth." *Iqbal,* 129 S. Ct. at 1951.  Under this standard, plaintiff has failed to state a claim for relief.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## FACTS

Although defendants reserve the right to contest any allegation later in this litigation, they refer only to plaintiff's construct of the facts as set forth in the Complaint. Defendants do not accept —nor is the Court required to accept— legal conclusions or adjectival editorializing.

Defendants are all members of or staff for the OMB. Complaint ¶¶ 7-25.

Plaintiff over the course of his career has come to disagree with the recommendations of the Centers for Disease Control for pediatric vaccinations, which he views as bad science. Complaint ¶ 52. In August 2016, plaintiff published a book in which he proselytized for an "alternative vaccine schedule." Complaint ¶ 59. Plaintiff believes the CDC recommended schedule of vaccines is "poisoning children's brains" and causing autism. Complaint ¶ 62.

Plaintiff asserts that because of his beliefs, OMB is "hellbent on ruining him." Which is, of course, a subjective conclusion and not a statement of fact. Complaint ¶ 76. The first action plaintiff claims to be a response to his book is the OMB investigating a complaint filed against him *more than two years later*, in December 2018. Complaint ¶ 77. Plaintiff admits that, after requesting records —which request plaintiff also views as an improper and retaliatory act— the OMB took… *no* action. Complaint ¶ 78.

If the OMB was "hellbent" on destroying plaintiff its actions belie that assertion. Even as plaintiff tells it, the next supposedly adverse move by OMB occurred a full year and a half later, in July 2020, when another complaint was filed against him. Complaint ¶ 79.

OMB suspended plaintiff's license on December 3, 2020, more than four years after his book was published. Complaint ¶ 83. Among the bases for the suspension —and although plaintiff denies the scientific validity of these bases he does not dispute they were the underlying issues leading to the suspension— were plaintiffs failure to document a parent declining a vaccination for their child (Complaint ¶ 99); his treatment of a child with pertussis in September 2018 and again not documenting the parental rejection of vaccination (Complaint ¶¶ 101, 103); plaintiff's inappropriate treatment of a child with Kawasaki Disease (Complaint ¶ 106); his treatment of another unvaccinated child who spent two months in the ICU at Doernbecher

Page 4 -    **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

Children's Hospital (Complaint ⁋ 111); his not vaccinating three children who were hospitalized with rotavirus gastroenteritis (Complaint ⁋ 114); his not vaccinating a sixth child over a course of seven years (Complaint ⁋⁋ 117, 120).  In addition, the OMB took issue with plaintiff not giving no fewer than 90 children a second dose of the measles, mumps and rubella ("MMR") vaccine.  Complaint ⁋⁋122, 124.

Plaintiff contends his rights were violated when the board did not immediately commence proceedings related to his suspension.  Complaint ⁋ 86.  The suspension lasted from December 4, 2020 through June 3, 2021.  Complaint ⁋ 128.  Plaintiff currently is able to engage in the practice of medicine.  Complaint ⁋⁋ 128, 129.

## ARGUMENT

### I.    Defendants are entitled to absolute immunity.

Plaintiff's entire action challenges the acts of the OMB in the performance of their core duty to protect the public from improper activities conducted by medical doctors.  Because this function is adjudicatory, federal common law imbues defendants with absolute judicial immunity from the claims brought under the First and Fourteenth Amendments.

"Absolute immunity is generally accorded to judges and prosecutors functioning in their official capacity."  *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004) (a board of medicine absolutely immune); *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976).  "[T]his immunity reflects the long-standing 'general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'"  *Olsen*, 363 F.3d at 922, *quoting Bradley v. Fisher*, 80 U.S. 335 (1871).

Certain classes of state officials who are not judges or prosecutors in the regular courts are also entitled to absolute immunity.  In deciding whether to extend absolute immunity to officials who are not traditionally considered judges, a court considers what function the official performs and examines whether that function is similar to a function that would have received absolute immunity when Section 1983 was enacted by Congress.  *Mishler v. Clift*, 191 F.3d 998,

Page 5 -    **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

1002 (9th Cir. 1999).  Under this functional approach, an official who "functions as the

equivalent of judge or prosecutor will likely be entitled to absolute immunity for any acts

committed in that role."  *Yoonessi v. Albany Med. Center*, 352 F. Supp. 2d 1096 (C.D. Cal. 2005)

(citing *Olsen*, 363 F.3d at 923).  The Supreme Court has held that executive branch officials,

when contributing to a federal administrative agency's adjudicative process, are entitled to

absolute immunity because they perform functions comparable to those of judges and

prosecutors.  *Mishler*, 191 F.3d at 1003 (*citing Butz v. Economou*, 438 U.S. 478, 512-13 (1978)).

This Court has repeatedly found the Oregon Medical Board ("OMB"), when reviewing a

doctor's license, to be "absolutely immune with regard to acts performed in their statutory

capacity as quasi-judicial prosecutors or judges."  *Gambee v. Williams*, 971 F. Supp. 474, 477

(D. Or. 1997) ("*Gambee I*").  Plaintiff in that action challenged his suspension by bringing suit

alleging a 42 U.S.C. § 1983 claim, a claim or conspiracy to violate Section 1983, and a claim

that the members of the OMB (then called the Board of Medical Examiners) had violated

plaintiff's rights under the Racketeering Influenced and Corrupt Organizations Act.  The Board

members asserted immunity.  The Court wrote:

> Agency judges and prosecutors are entitled to absolute, quasi-judicial immunity
> with regard to acts performed in a court-like setting.  *Hirsh v. Justices of the
> Supreme Court of California*, 67 F.3d 709, 715 (9th Cir. 1995) (members of state
> bar disciplinary board absolutely immune from section 1983 liability).  Other
> circuits have applied the absolute immunity doctrine in the context of a
> physician's section 1983 challenge to his license revocation.  *See Wang v. New
> Hampshire Bd. of Registration in Medicine*, 55 F.3d 689, 701, 702 (1st Cir 1995)
> and *Horwitz v. Bd. of Medical Examiners* ,822 F.2[d] 1508, 1515 (10th Cir. 1987),
> *cert. denied*, 484 U.S. 964, 108 S. Ct. 453, 98 L. Ed.2d 394 (1987).  I find that
> BME members are absolutely immune with regard to acts performed in their
> statutory capacity as quasi-judicial prosecutors or judges.

*Id.*at 477; *see also Bergin v. McCall*, 2007 WL 2344924 at *4 (D. Or. 2007).

The language of *Gambee I* is clear.  Moreover, the immunity from suit was subsequently

affirmed in *Gambee II*, 2011 WL 1311782 (D. Or. April 1, 2011).[1]

---

[1] It should be noted that, under state law, immunity also attaches to the OMB.  Pursuant to ORS
677.335(1), "[m]embers of the Oregon Medical Board, members of its administrative and
investigative staff, medical consultants, and its attorneys acting as prosecutors or counsel shall

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Gambee II* followed the analysis in *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916 (9th Cir. 2004), and in *Butz v. Economou*, 438 U.S. 478, 512-13 (1978).  Olsen brought Section 1983 and state law claims against individual members, counsel, and staff of the Idaho State Medical Board ("ISMB") and Board of Professional Discipline ("BOPD"), the disciplinary arm of the ISMB.  *Id.* at 918-19.  Olsen alleged that the defendants prevented her from reinstating her physician's assistant license by engaging in protracted administrative process with discriminatory motives.  *Id*. at 919. She asserted that the defendants' decisions and actions in revoking and denying her license violated her due process and equal protection rights.  *Id*. Specifically, she claimed that a letter informing her of the ISMB's intent to deny her license, the ISMB's decision not to hold a hearing, and the ISMB' s administrative order denying her application were specific acts or decisions that violated her rights.  *Id*. at 927-28.

The court held that ISMB and BOPD, their members, and their professional staff and legal counsel were all entitled to absolute immunity because their acts and decisions were all "procedural steps involved in the eventual decision denying Olsen her license reinstatement."  *Id*. at 928.  "Such acts are inextricably intertwined with [defendants'] statutorily assigned adjudicative functions and are entitled to the protections of absolute immunity."  *Id*.

*Olson* utilized the factors set forth by the Supreme Court in *Butz v. Economou*, 438 U.S. 478, 512-13 (1978), to determine whether defendant's activities were to be accorded absolute immunity.  *Butz*, 438 U.S. at 512.  These factors are: (1) the need to assure that the defendant can perform its functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) the agency's insulation from political influence; (4) the importance of precedent; (5) the adversary nature of the process; and (6) the correctability of error on appeal.  *Id*.

As determined in *Gambee II*, the factor analysis requires that defendants are accorded protections of absolute immunity for all conduct complained of.

---

have the same privilege and immunities from civil and criminal proceedings arising by reason of official actions as prosecuting and judicial officers of the state."

More recently, this Court again affirmed OMB's absolute judicial immunity in *LaTulippe v. Harder*, 2021 WL 5530945 (D. Or. Nov. 23, 2021).  The facts before this Court are quite similar to those in *LaTulippe*.  In the former case, the plaintiff doctor took issue with the prevailing medical practices —in that case, masking during Covid— and was suspended by the OMB.  He brought suit for First and Fourteenth Amendment violations.  The Court declined to reach the underlying claims because the OMB was entitled not to have to stand to answer the allegations at all, given its immunity.  *Id.* at *8.  *LaTulippe* should govern the outcome of this action.

Here, it is uncontested that OMB was performing a review of plaintiff's ability to remain licensed, just as it was in *Gambee I, Gambee II,* and *LaTulippe.*  Accordingly, a review of the same factors militates in favor of a grant of immunity from such Constitutional claims when in this adjudicatory role.

### 1.    Ensuring performance of functions without harassment.

The OMB is the agency that is charged with the regulation and discipline of state-licensed medical doctors.  ORS Chapter 677.  The OMB has the authority to conduct investigations and hearings and take action with respect to licensing.  ORS 677.190, 677.200, 677.205.  As the court noted in *Olsen*, "in *Mishler*, we found that immunity for medical board and its members serves important public interests."  *Olsen*, 363 F.3d at 924 (*citing Mishler*, 191 F.3d at 1005).  In particular, there is a need to ensure that medical boards can perform disciplinary functions, without the fear of harassment or intimidation, in order to effectively address the strong public interest in quality health care.  *Id.*  The *Gambee II* Court noted that precisely the type of suit presently before this Court is such a threat, and itself shows the need for immunity.  *Gambee II at *4; Mishler v. Clift*, 191 F.3d at 1005; *Bettencourt v. Board of Registration in Medicine*, 904 F.2d 774, 783 (1ˢᵗ Cir. 1990).  OMB's functions include regulating and disciplining doctors in Oregon and protecting the public's health and safety.  ORS 677.190, 677.200, 677.205.  Granting absolute immunity allows these functions to continue without harassment and intimidation.

Page 8 -   **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

**2.    Safeguards reducing the need for private damages.**

Similar to Medical Boards in *Olsen* and *Mishler*, OMB functions under a complete set of statutes. ORS Chapter 677.  Furthermore, there are ample procedural rules and regulations for the OMB's activities under the Oregon Administrative Procedures Act ("APA").  ORS 183.310 *et seq.*  The Oregon APA sets forth the proper and required procedures.  Thus, like *Olsen* and *Mishler* and, of course, *Gambee I* and *Gambee II*, this Court should again conclude that the procedures set out in Oregon statutes provide complete and necessary safeguards to plaintiffs.

**3.    Insulation from political influences.**

Through the above political safeguards, members of the Board are sufficiently insulted from outside political pressures.  *Gambee II* at *5.  In addition, the presence of public members lessens the risk that the OMB will make decisions based on financial self-interest.  *Id.*

**4.    Remaining factors: precedent, adversariness and correctability.**

The remaining *Butz* factors are also present in the OMS's procedure and practice.  The investigation was conducted in accordance with ORS Chapter 183, and therefore applies precedent and is necessarily adversarial.  Any errors made by the Board can be corrected on appeal to the Oregon Court of Appeals.  As such, it is clear that by viewing the *Butz* factors in totality, as this Court has previously held, the OMB's investigations are functionally comparable to judges and prosecutors.  Therefore, the individual defendants should be afforded absolute immunity and are entitled to judgment as a matter of law.

**II.    Plaintiff's free speech claim is not actionable.**

Plaintiff alleges that the members of the OMB retaliated against him in violation of the First Amendment by suspending his medical license because of his publishing a book critical of and urging an alternative to the CDC recommended schedule of children's vaccinations. Complaint ¶¶ 76, 77.   But plaintiff's First Amendment claim fails for multiple reasons.  First, the OMB's Order of Emergency Suspension is based on plaintiff's professional conduct, not his

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

speech. Complaint ¶¶ 99, 101, 103, 106, 111, 114, 117, 120, 122, 124.[2]  The Supreme Court "has upheld regulations of professional conduct that incidentally burden speech." *Nat'l Inst. of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361, 2373 (2018) ("*NIFLA*").  Second, even if a retaliation claim could theoretically be viable where a professional is disciplined by his licensing board (which defendants do not concede), it would still fail here.  It would fail either because plaintiff did not plead and cannot prove lack of probable cause or because no claim will lie where a professional was disciplined for professional advice to a patient.  Third, and in any event, no fact finding or discovery is necessary for this Court to conclude that OMB's action meets any applicable level of scrutiny that the Court were to apply under the First Amendment.

A.      **States can regulate professional conduct that incidentally burdens speech.**

Federal courts have long recognized the states' primary role in regulating the conduct of professions under their police powers.  *See, e.g., Gonzales v. Carhart*, 550 U.S. 124, 157 (2007) ("Under our precedents it is clear the State has a significant role to play in regulating the medical profession."); *Jarlstrom v. Aldridge*, 366 F. Supp. 3d 1205, 1214 (D. Or. 2018) ("The Supreme Court has long recognized that states have broad authority to regulate the practice and licensing of certain professions.").  Over a century ago, the Supreme Court noted, "[i]t is too well settled to require discussion at this day that the police power of the states extends to regulation of certain trades and callings, particularly those which closely concern public health." *Watson v. State of Maryland*, 218 U.S. 173, 176 (1910).  It later explained, "We recognize that the States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions." *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975).

---

[2] Alternatively, defendants ask this Court to take Judicial notice, under Fed. R. Evid. 201(b)(2), of the Order of Emergency Suspension dated December 4, 2020.  Microsoft Word - Thomas Paul - Emergency Susp - Final (oregon.gov), attached to this Memorandum as Exhibit A for the Court's convenience.

Page 10 - **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

Given the importance of the states' role in regulating the practice of professions, the Supreme Court has recognized that state power to regulate professions extends to speech. In *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 884 (1992), the Supreme Court found "no constitutional infirmity in the requirement that the physician provide the information mandated by the State" because the "physician's First Amendment rights not to speak" are "part of the practice of medicine, subject to reasonable licensing and regulation by the State." The Court in *NIFLA*, 138 S. Ct. at 2372 also explained that "this Court has upheld regulations of professional conduct that incidentally burden speech," and that "professionals are no exception to this rule." *Id.* at 2373. *NIFLA* cited an example of such regulations: "Longstanding torts for professional malpractice, for example, 'fall within the traditional purview of state regulation of professional conduct.'" *Id.* (quoting *NAACP v. Button*, 371 U.S. 415, 438 (1963)).

The Ninth Circuit, in *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014), *abrogated by NIFLA*, 138 S. Ct. at 2374-75, upheld a California statute banning licensed mental health providers from providing sexual orientation change therapy to minors. Although the Supreme Court in NIFLA declined to recognize the "professional speech doctrine" that the Ninth Circuit developed (without "foreclose[ing] the possibility" that it might do so in the future), it did not disturb the *Pickup* holding. *NIFLA*, 138 S. Ct. at 2374. The Ninth Circuit held that the statute banning the provision of sexual orientation change therapy to minors, although delivered solely through speech, "regulates conduct." 740 F.3d at 1229. In the "regulation of professional *conduct*," the court explained, "the state's power is great even though such regulation may have an incidental effect on speech." *Id*; *see, e.g., NIFLA*, 138 S. Ct. at 2373 ("While drawing the line between speech and conduct can be difficult, this Court's precedents have long drawn it[.]"). The court upheld the statute under rational basis review. 740 F.3d at 1231-32; *see also Doyle v. Hogan*, 411 F. Supp. 3d 337, 344-48 (D. Md. 2019) (upholding similar statute under intermediate scrutiny); *but see Otto v. City of Boca Raton*, 981 F.3d 854 (11th Cir. 2020) (holding ordinance

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

banning sexual orientation change therapy for minors to be invalid under First Amendment as content-based speech restriction).

The specific regulation at issue here —the suspension of plaintiff's license— is a regulation of his professional conduct, not his speech. The OMB's Order of Emergency Suspension explains that the basis for the suspension is a years-long record of pressuring parents not to vaccinate their children, contending vaccines cause autism, and breaching the standards of care for treatment of children through his rejection the recommended regimen for vaccination. Order of Emergency Suspension at 3.2-3.5. Plaintiff's license was suspended due to his unprofessional *conduct* in the practice of medicine, not speech. Other than some disputes about documentation, plaintiff does not deny this conduct charged by the OMB; he merely challenges the regulator's right to set standards as to which he thinks he knows better. *See* Complaint ¶¶ 99-125. In fact, plaintiff largely seeks to justify the conduct by disputing the need for the public health measures with which he failed to comply. Complaint ¶¶ 53-74, 82. But his disagreement with the science and with the standards of care that guide the practice of his profession does not immunize him from the consequences of his noncompliance with basic health and safety standards. The First Amendment cannot shield plaintiff from professional discipline.

Plaintiff may point to the OMB's findings that reference plaintiff's professional advice to his patients not to have their children vaccinated, and he may claim this is protected speech that cannot be regulated. *E.g.,* Order of Emergency Suspension 3.2.1, 3.3.1. But to the extent it can be characterized as speech at all, it is speech that is incidental to the practice of his profession. And in any event, the Supreme Court has explained that states can regulate professionals who commit professional malpractice. *NIFLA*, 135 S. Ct. at 2373. Advising patients contrary to the medical standard of care to take actions that pose an immediate danger to them and others, which is the conclusion that OMB reached, is professional malpractice. If OMB had not acted with some urgency to suspend plaintiff's license, his advice could have caused significant harm to his patients and people in the community with whom they come into contact.

Page 12 -  **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

Based on the facts asserted by plaintiff and the content of the OMB emergency order, the suspension was based on his professional conduct, not his speech. As a result, it is subject to reasonable regulation by the OMB and the most deferential review standard: rational basis review. *See Casey*, 505 U.S. at 884, 967-68; *Pickup*, 740 F.3d at 1231. Because, as explained in subsection C. below, the OMB's emergency suspension order easily satisfies rational basis review, the First Amendment claim fails at the outset.

**B.    Plaintiff's alleged speech and the suspension are not temporally proximate.**

Plaintiff alleges that he published a book in August 2016 and that, enraged by its contents, the OMB "sought to destroy Dr. Thomas" … more than four years later. Complaint ¶ 56.

The United States Supreme Court has spoken clearly on the matter of using proximity of timing alone as evidence in in *Clark County School District v. Breeden*, 532 U.S. 268, 121 S. Ct. 1508 (2001), and has said that, in circumstances that involve only "mere temporal proximity," even three or four months is too long to support a legally sufficient inference of retaliation. *Id.* at 273.

The Ninth Circuit, in examining this issue, has also limited the significance of such an inference to situations measured in months, not years. *Bell v. Clackamas County*, 341 F.3d 858, 865-66 (9th Cir. 2003) (only a matter of weeks, not months, apart); *Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003); *Villarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) ("In order to support an inference of retaliatory motive, the termination must have occurred 'fairly soon after the employee's protected expression.'").[3] Other circuit courts also have held that the inference to be drawn from proximity is only available for extremely short time periods. The case law unambiguously holds that window to three to four months. *See, e.g., O'Neal v. Ferguson Contr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (three months too long);

---

[3] Although much of this analysis has occurred in employment cases, there is no reason that the analytical approach —being a matter of evidentiary sufficiency— should not be generally applied.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Filpovic v. K&R Express Systems, Inc.*, 176 F.3d 390, 398-99 (7th Cir. 1999) (four months too long); *Adusumilli v. City of Chicago,* 164 F.3d 353, 363 (7th Cir.1998) (eight months too long), *cert. denied,* 528 U.S. 988 (1999); *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 511 (7th Cir.1998) (five months too long); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three months too long); *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (four months too long); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-1175 (7th Cir. 1992) (four months too long); *see also Thomas v. Fred Meyer Jewelry, Inc.*, 2005 WL 1502644 (D. Or. June 23, 2005) (applying analysis in Title VII claim).

Oregon courts also adopt this approach. *Brunick v. Clatsop County*, 204 Or. App. 326 (2006); *Bernsten v. Dollar Tree Stores, Inc.* 2007 WL 756744 (D. Or. 2007).

Plaintiff alleges a weapon was primed in August 2016 and fired in December 2020. Defendants are unaware of any case that has sustained a claim on the basis of temporal proximity in such circumstances. Four years, quite simply, is not "proximate."

### C.    OMB's emergency order can meet any level of scrutiny.

Because OMB suspended Plaintiff's license based on his conduct in the practice of medicine, rational review applies, which defendants easily satisfy. But even if the Court were to apply a more stringent level of scrutiny, OMB's action would satisfy it. OMB suspended plaintiff's license because he was not meeting the basic standard of care relating to administering vaccinations to protect the health and safety of his patients. As the OMB emergency order explains,

> The Centers for Disease Control and Prevention's 'Recommended Child and Adolescent Immunization Schedule for ages 18 years or younger, United States, 2020' (CDC Recommendations) and its predecessors provides a series of vaccinations for children that start at birth and continue through the ages of childhood to provide immunizations for a number of diseases that are potentially debilitating or fatal, to include Hepatitis, Rotavirus, Diphtheria, Tetanus, Pertussis (whooping cough), Polio, Influenza: Pneumococcal pneumonia, Measles, Mumps, Rubella, and a number of other preventable diseases. This schedule has been relied upon for many years, is updated periodically, and is widely accepted as authoritative in the medical community."

Order of Emergency Suspension at 2.1.

Page 14 - **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

> Licensee uses this claim [that his reduced vaccination schedule produces superior results] to solicit parental 'refusal' of full vaccination for their children, thereby exposing them to multiple potentially debilitating and life-threatening illnesses, including tetanus, hepatitis, pertussis (whooping cough), rotavirus, measles, mumps, and rubella."

Order of Emergency Suspension at 3.1.

OMB suspended Plaintiff's license because Plaintiff refused to comply with basic public health standards.  If ever a regulation of speech could satisfy a heightened level of scrutiny, protection of children's health and safety would satisfy it.  As a matter of law, the OMB order was consistent with the First Amendment under any level of scrutiny.

For all these reasons, the First Amendment claim lacks merit and should be dismissed.

## III.    Plaintiff's right to procedural due process has not been violated.

Plaintiff alleges his procedural due process rights were violated when OMB suspended his medical license temporarily without a simultaneous suspension hearing.  Complaint ¶ 85.  He contends he had the right to a hearing prior to his suspension.  Complaint ¶ 87.

Procedural due process requires notice and an opportunity to be heard.  *See California ex rel. Lockyer v. FERC*, 329 F.3d 700, 708 n.6 (9th Cir. 2003).  But "[p]recisely what procedures the Due Process Clause requires in any given case is a function of context."  *Brewster v. Board of Educ. Of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983 (9th Cir. 1998).  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600 (1972).  The U.S. Supreme Court "has recognized, on many occasions, that where a State must act quickly, or where it would be impractical to provide pre-deprivation process, post-deprivation process satisfies the requirements of the Due Process Clause."  *Gilbert v. Homar*, 520 U.S. 924, 930-31, 117 S. Ct. 1807, 1812 (1997) (listing cases).  "An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation."  *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 240, 108 S. Ct. 1780, 1787–88 (1988).

Page 15 -  **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

But procedural due process does *not* automatically —or even usually— provide for a *pre-deprivation* hearing. The line of cases interpreting the right to a pre-deprivation hearing culminates in the U.S. Supreme Court's decision in *Gilbert v. Homar*, 502 U.S. 924 (1997), which is the controlling case. In *Gilbert,* the Supreme Court determined that a professional license suspension such as the one before this Court do not require a pre-deprivation hearing. The *Gilbert* Court noted that whether such a pre-deprivation hearing is required turns on the "length and finality of the deprivation." *Id.* at 932. *Gilbert* limits, if not overrules, any contrary prior authority.

Determining whether a pre-deprivation hearing is required, in turn, is based on a three-step analysis:

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews v. Eldridge*, 424 U.S. 319, 334-35, 96. S.Ct. 893 (1976).

Applying these standards, a post-deprivation hearing is all the process plaintiff is due.

First, the private interest here is limited to loss of income. In *Tanasse v. City of St. George,* 172 F.3d 63 (10th Cir. 1999), the issue was also license revocation. The Tenth Circuit found for the City of St. George that a pre-deprivation hearing would not be required. The court noted that although the finances of a party were a concern, they did not rise to a level of critical private interest. *Id.* at *3. The court noted that such an interest was less compelling than the subsistence benefits at issue in *Loudermill*, where the Supreme Court found a post-deprivation hearing to be constitutionally sufficient. *Loudermill v. Cleveland Board of Education*, 470 U.S. 532 (1985).

Second, plaintiff cannot explain how a hearing would have been more effective at preventing the alleged erroneous deprivation and defendants can think of no way in which haste would improve the administrative/judicial process.

Page 16 -  **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

Third, as noted in great detail below, the government's interest —protecting children from a variety of diseases, many of which are highly communicable— is clearly substantial. Accordingly, applying the approach supported by *Tenasse* and as set forth in *Loudermill*, any suggestion plaintiff was entitled to a pre-deprivation hearing fails all three elements of the test.

In addition, it should be noted that the licensure procedure is subject to all sorts of protections for the affected party.  OMB is subject to the Oregon Administrative Procedures Act ("APA") as an agency of the State.  ORS 183.310 *et seq*.  A proceeding in which an Oregon agency intends to suspend, revoke, or refuse to renew or issue a license where the licensee demands a hearing is a "contested case."  ORS 183.310(2)(a)(C).  Parties to a contested case have many procedural rights.  *See* ORS 183.411 to ORS 183.500.  Such rights are those normally present in such administrative litigation.   A few examples are:

- Right to notice of a statement of the matters asserted or charged by the agency,

- Right to hearing,

- Right to notice of the procedures that will be used at the hearing, including the authority and jurisdiction for the hearing and the issues to be considered,

- Right to be represented by counsel,

- Right to respond to all issues properly before the hearing officer,

- Right to present evidence, and

- Right to cross-examine witnesses and present rebuttal evidence.

ORS 183.450(3).  Moreover, contested case hearings must be conducted before an administrative law judge ("ALJ") from the Office of Administrative Hearings.  ORS 183.630(1); ORS 183.635(2).  After presiding over the hearing, the ALJ prepares a proposed order.  ORS 183.460. The proposed order must be served on all parties, must include recommended findings of fact and conclusions of law, and may be disputed by an adversely affected party.  ORS 183.460; 183.464.

Any party may appeal the final order to the Oregon Court of Appeals.  *See* ORS 183.480(1); ORS 183.482(1).  The Court of Appeals may reverse or remand an order for legal

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

and procedural mistakes, improper exercise of agency discretion, or lack of substantial evidence supporting the order.  ORS 183.482(8).

An agency's proposed action with respect to a license is usually not effective until it issues the final order.  But ORS 183.430(2) provides that an agency may suspend a license before holding a hearing in an emergency where "the agency finds a serious danger to the public health or safety and sets forth specific reasons for such findings."  The agency is required to serve a notice of the suspension either personally or by registered or certified mail.  OAR 137-003-0560(2)(a).  On request by a licensee the agency must hold a hearing and issue a decision "as soon as practicable," and in all events within explicit time limits.  *See* OAR 137-003-0560 (3) (referral to the Office of Administrative Hearings within 7 days of request for hearing, hearing held within the following 30 days, proposed order issued within 15 days after the hearing, and final order issued within 15 days after the proposed order).

Plaintiff relies upon ORS 677.205(3), which states that the Oregon Medical Board "may temporarily suspend a license without a hearing, simultaneously with the commencement of proceedings under ORS 677.200 if the board finds that evidence in its possession indicates that a continuation in practice of the licensee constitutes an immediate danger to the public."  During the suspension, "the holder of the license may not practice * * *." ORS 677.205(5).  Although "immediate danger to the public" and "serious danger to the public" are not defined, certainly putting others at risk of infection with a communicable disease would be included in any definition of that term. *See generally* ORS 677.188; ORS 183.310.

In addition, plaintiff appears to conflate two different terms: "hearing" and "proceeding." The statute unambiguously says there is not a need for a hearing, only for a beginning to the proceedings.  Those proceedings are simply that the party get administrative procedure as set forth in ORS Chapter 183.  ORS 677.200(2).  That the OMB did not, immediately, convene a hearing is neither required by its own statutory commandments or federal constitutional law.

As to the issue of any deficiency in post-deprivation due process, plaintiff has not made any such allegation.

Page 18 -  **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

Plaintiff's due process rights were not violated here.

**IV.    Alternatively, defendants are entitled to qualified immunity.**

In the event the Court does not apply absolute judicial immunity to end this case, it should at the least apply qualified immunity and end all claims for damages.

Plaintiff sues the defendants in their "individual" and "professional" capacities. Complaint ¶¶ 7-25.  However, plaintiff sues only for money damages.  Complaint Prayer for Relief.  A party sued only in their official capacity may not be sued for money damages.  *Ex parte Young,* 209 U.S. 123 (1908).  Accordingly, this Court should view this case as being brought against the defendants only in their personal capacities.  And if it does, it should apply qualified immunity and bar the damages claims.

Personal capacity suits seek to impose personal liability on government officials for the actions they take under color of state law.  *Kentucky v. Graham*, 473 U.S. 159 (1985); *Scheuer v. Rhodes*, 416 U.S. 232, 237-38 (1974).  To establish personal liability in a Section 1983 action, it is necessary to show that the official, acting under color of state law, caused the deprivation of a federal right.  *Monroe v. Pape*, 365 U.S. 167 (1961).  Even if plaintiff can make such a demonstration, individual State defendants may be found qualifiedly immune by this Court if they have objectively reasonably relied on existing law.  *Imbler v. Pachtman*, 424 U.S. 409 (1976) (absolute immunity); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)  (qualified immunity).

Qualified immunity shields government officials from liability for damages when they make decisions that, even if constitutionally deficient, reasonably misapprehend the law governing the circumstances confronted.  *Brosseau v. Haugen*, 543 U.S. 194, 202 (2004); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  Officials are denied qualified immunity only when "[t]he contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Qualified immunity is immunity from suit, not merely a defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Like absolute immunity, qualified immunity is

Page 19 -  **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

effectively lost if a case is erroneously permitted to go to trial.  *Id.*  Consequently, the Court has

repeatedly stressed resolving immunity questions at the earliest possible stage in litigation.  *See*

*Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*); *Saucier v. Katz*, 533 U.S. 194, 201

(2001).

      The Supreme Court has changed its stance on the test that has been used for qualified

immunity.  *See Pearson v. Callahan*, 129 S. Ct. 808 (2009).  In *Pearson*, the Court held that it is

no longer mandatory for lower courts to utilize both steps in the test from *Saucier v. Katz* when

determining whether qualified immunity applies.  *Id.* at 818.  Under *Saucier*, the Court

developed a two-step analysis.  *Saucier v. Katz*, 533 U.S. 194 (2001).

      The first question that must be answered in deciding if qualified immunity should be

permitted: did the official violate the plaintiff's constitutional rights?  *Id.*  If the answer to this

question is no, then the official is entitled to qualified immunity.  *Id.*

      If the answer to the first questions is yes, then the court must answer an additional

question before granting qualified immunity: was the law governing that right clearly

established?  *Id.*  "The relevant, dispositive inquiry in determining whether a right is clearly

established is whether it would be clear to a reasonable officer that his conduct was unlawful in

the situation he confronted."  *Id.* at 202.  If the answer to the second question is no, then the

official is entitled to qualified immunity.  *Id.*

      In *Pearson*, the Court explicitly held that the sequence of steps required under *Saucier*

"should no longer be regarded as mandatory."  *Pearson*, 129 S. Ct. at 808.  Accordingly, while

courts *may* continue to use the *Saucier* ordered test, courts have the discretion to determine

"whether that procedure is worthwhile in particular cases."  *Id.* at 821.  Regardless of whether

this Court decides to use one or both *Saucier* steps, Defendants are entitled to qualified immunity

because there was no constitutional or statutory violation, and there was no clearly established

law alerting reasonable officials that their actions violated Plaintiff's rights.

      As to due process, plaintiff has been unable to articulate what any member of the OMB

did except to serve as a member of that Board and cast votes on his licensure by virtue of

Page 20 -  **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

imposing the Order of Emergency Suspension, or what staff did other than prepare materials for the OMB's consideration.  As to free speech, as noted above, there is no basis to allow a claim where the alleged retaliatory acts were years later than the speech stand, and thus there is no basis to conclude defendants committed any violation of clearly established law.  Each of the individual OMB defendants is entitled to the application of qualified immunity.  As set forth above, they used their discretion as regulators to issue a determination on plaintiff's fitness to practice medicine that was not related to his speech.  Accordingly, they did not violate any well-established law of which they should have been aware.

**V.      The State law claims should be dismissed or the defendants substituted.**

**A.      The defendants are immune from state law claims.**

Under state law, immunity attaches to all members and staff of the OMB.  ORS 677.335(1) states that "[m]embers of the Oregon Medical Board, members of its administrative and investigative staff, medical consultants, and its attorneys acting as prosecutors or counsel shall have the same privilege and immunities from civil and criminal proceedings arising by reason of official actions as prosecuting and judicial officers of the state."  *See Read v. Haley*, 2013 WL 1562938 (D. Or. Apr. 10, 2013).

Thus, simply, on this basis alone the Third through Eighth Claims for Relief should be dismissed.

**B.      The Eleventh Amendment bars maintenance of these claims.**

Because plaintiff seeks damages for actions uniquely committed in defendants' roles as members of the OMB or staff of the OMB, it is the same as suing the State itself.  *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 99 (1984); *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 429 (1945).  Plaintiffs' Third through Eighth Claims assert violations of Oregon statutory and common law.  As such, they cannot be maintained in this forum against defendants.

The Eleventh Amendment provides that the judicial power of the United States "shall not be construed to extend to any suit in law or equity commenced or prosecuted" against a state.

Page 21 -  **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

The U.S. Supreme Court has held that this language bars citizens from suing states or state agencies in federal court unless the state has expressly waived its immunity from suit or that immunity has otherwise been abrogated by Congress.  *Pennhurst*, 465 U.S. at 99; *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238 (1985).

Here, the Eleventh Amendment bars plaintiffs' state-law claim as against the State. A federal court lacks jurisdiction to adjudicate state law claims against state officials. *See Pennhurst*, 465 U.S. at 124–25; *see also id.* at 106 ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

A state only waives its Eleventh Amendment immunity when it expressly consents to being sued in a particular action. *Edelman*, 415 U.S. at 673 ("[we] will find waiver only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction"); *Micomonaco v. State of Washington*, 45 F.3d 316, 319 (9th Cir. 1995).  Here, plaintiff sues state actors for violations of the Oregon Constitution and there cannot, perforce, express a State waiver to permit suit in federal court for such claims.  Oregon has never waived its immunity from suit in federal court for such claims.

Eleventh Amendment immunity not only applies to monetary damages, but also to injunctive relief.  "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies." *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995).

In addition, in federal court, claims brought under pendent or supplemental jurisdiction pursuant to state law theories are decided by application of the law of the state in which they arise.  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966), *citing Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).  Under the Oregon Tort Claims Act ("OTCA"), when a suit arises out of the act or omission of an officer, employee or agent of a public body within the course and scope of his official duties, the public body is substituted as the defendant.  ORS 30.265(3).

Page 22 -  **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

There is no allegation in the Second Amended Complaint that any individual State Defendant acted outside the scope and course of their duties.

Therefore, pursuant to the OTCA, if the state law claims are not outright dismissed, the Court should substitute the State of Oregon for each of the individual defendants as the proper defendant in the Third through Eighth Claims for Relief.  ORS 30.265(1).

## **CONCLUSION**

Plaintiff wrote a book in 2016.  No one cared.  No one did anything about it.  But when plaintiff conducted his medical practice in a manner contrary to science, and contrary to the legitimate regulation of his licensing authority, then and only then did the OMB take action.  The OMB followed the law in issuing an Order of Emergency Suspension and did so without any reference to or concern for what statements plaintiff was making.

There has been no due process violation.  There is no allegation sufficient to allow the free speech claim to proceed.  The Eleventh Amendment bars maintenance of the state law claims.  But, most importantly, on each and every one of these claims, the defendants enjoy absolute judicial immunity.  Because that is dispositive, defendants request this Court issue an Order and Judgment dismissing this action with prejudice.

DATED July 13, 2022.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

_s/ Marc Abrams_
MARC ABRAMS #890149
Assistant Attorney-in-Charge
Trial Attorney
Tel (971) 673-1880
Fax (971) 673-5000
marc.abrams@doj.state.or.us
Of Attorneys for Defendants

Page 23 -  **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**