ELLEN F. ROSENBLUM
Attorney General
MARC ABRAMS #890149
Assistant Attorney-in-Charge
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: marc.abrams@doj.state.or.us

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| PAUL THOMAS, MD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KATHLEEN HARDER, SAURABH GUPTA, ERIN CRAMER, ROBERT CAHN, JAMES LACE, CHARLOTTE LIN, PATTI LOUIE, JENNIFER LYONS, ALI MAGEEHON, CHERE PEREIRA, CHRIS POULSEN, ANDREW SCHINK, JILL SHAW, ERIC BROWN, JASON BOEMMELS, DAVID FARRIS,<br><br>　　　　Defendants. | Case No. 3:22-cv-00944-JR<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

**TABLE OF CONTENTS**

LEGAL STANDARD ........................................................................................................... 1

FACTS ................................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

   I.  Defendants are entitled to absolute immunity. ................................................... 2

   II.  Plaintiff's free speech claim is not actionable. (First Claim for Relief) ............... 4

      A.  States can regulate professional conduct that incidentally burdens speech. ..... 4

      B.  Plaintiff's alleged speech and the suspension are not temporally proximate. ... 5

      C.  OMB's emergency order can meet any level of scrutiny. .................................. 5

   III.  Plaintiff's right to due process has not been violated. ........................................ 6

      A.  Procedural Due Process (Second through Fifth Claims for Relief) ................. 6

      B.  Substantive Due Process (Sixth and Seventh Claims for Relief) ..................... 8

   IV.  Alternatively, defendants are entitled to qualified immunity. ............................ 9

CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

Cases

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................................... 1

*Barren v. Harrington,* 152 F.3d 1193 (9th Cir.1998) ...................................................................... 7

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) ................................................................................ 3

*Castro v. Terhune*, 712 F.3d 1304 (9th Cir. 2013) .......................................................................... 8

*Chalkboard , Inc. v. Brandt*, 902 F.2d 1375 (9th Cir. 1889) ........................................................... 2

City of Chicago v. Morales, 527 U.S. 41, 119 S.Ct. 1849 (1999) .................................................... 7

*City of Tahlequah v. Bond*, 2021 WL 4822664, 595 U.S. ___, 142 S. Ct. 9 (2021) ..................... 10

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ................................................................ 8, 9

*Engquist v. Oregon Department of Agriculture*, 478 F.3d 895 (9th Cir. 2007) .............................. 9

*Gambee v. Cornelius*, 2011 WL 1311782 (D. Or. Apr. 1, 2011) .................................................... 1

*Gambee v. Williams*, 971 F. Supp. 474 (D. Or. 1997) ................................................................ 1, 2

*Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975) ..................................................................... 5

*Gonzales v. Carhart*, 550 U.S. 124 (2007) ..................................................................................... 5

*King v. Atiyeh*, 814 F.2d 565 (9th Cir. 1987) .................................................................................. 7

Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855 (1983) ............................................................. 7

*LaTulippe v. Harder*, 2021 WL 5530945 (D. Or. Nov. 23, 2021) .......................................... 1, 2, 4

*Monell v. Dept. of Social Services*, 436 U.S. 658 (1978) ............................................................... 7

*Nat'l Inst. of Family and Life Advocates v. Becerra, 138 S. Ct. 2361 (2018)* ................................ 4

*Patel v. Penman*, 103 F.3d 868 (9th Cir. 1996) .............................................................................. 8

*Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484 (10th Cir. 1991) ................................................ 3

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014) .................................................................. 5

*Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992) ...................... 5

*Rise v. Oregon*, 59 F.3d 1556 (9th Cir. 1995) ........................................................................ 7

*Rivas-Villegas v. Cortesluna*, 2021 WL 4822662, 595 U.S. ___ (Oct. 18, 2021) ........................ 10

*Sagana v. Tenorio*, 384 F.3d 731 (9th Cir. 2004) ............................................................. 8, 9

*Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936 (9th Cir. 2004) ............................................ 8

*Wang v. N.H. Bd. of Registration in Med.*, 55 F.3d 698 (1st Cir. 1995) ..................................... 3

*Watson v. State of Maryland*, 218 U.S. 173 (1910) ............................................................... 5

*White v. Pauly*, 137 S. Ct. 548, (2017) ............................................................................... 11

## Statutes

ORS 183.430 ........................................................................................................................ 1

ORS 677.200 .................................................................................................................... 2, 6

ORS 677.205 .................................................................................................................... 2, 6

ORS 677.335 ........................................................................................................................ 3

ORS Chapter 677 ............................................................................................................. 1, 6

## Rules and Regulations

Fed. R. Civ. P. 3 .................................................................................................................... 6

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## INTRODUCTION

Plaintiff argues that the OMB is not entitled to immunity by making a curious —and critical— omission. Nowhere in his 41-page Response does he even once mention or address the governing law in this area: *Gambee v. Williams*, 971 F. Supp. 474, 477 (D. Or. 1997); *Gambee v. Cornelius*, 2011 WL 1311782 (D. Or. Apr. 1, 2011); and *LaTulippe v. Harder*, 2021 WL 5530945 (D. Or. Nov. 23, 2021). But these cases govern, and immunity should, again, attach to the OMB.

Similarly, plaintiff misapprehends regulation of speech and conduct, and thereby does not correctly cite the law that permits OMB's appropriate regulation of his actions. Nor does plaintiff set forth the appropriate standards for determining the viability of his due process claims.

Finally, plaintiff does not properly respond to the current law of qualified immunity, which requires a specificity of claims he does not offer.

This case should not proceed.

## LEGAL STANDARD

Plaintiff does not contest the defendants' formulation of the standards on a motion to dismiss. That noted, plaintiff's Response is largely unsupported assertions, flowery turns of phrase, self-praise and conclusory subjective statements. Under *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1951 (2009), all this verbiage can be dispensed with.

## FACTS

Many assertions that plaintiff claims are "facts" are no such thing. That said, a few key misstatements need to be pointed out.

Plaintiff says, Response at 3, that the Board's power is limited to suspensions under ORS Chapter 677. The Board also has that authority under ORS 183.430(2).

Plaintiff says there must be a written complaint to start the process. *Id.* This is true but misleading, as under the statute plaintiff himself cites, a member of the Board can generate that

complaint and no specific format is required. It need only be "A written complaint of some person." ORS 677.200

Plaintiff says a complaint must be "filed." Response at 3. That is wrong. The OMB is not a court and the complaint is not a formalized pleading. Accordingly, plaintiff's contention, Response at 4, that he could not be suspended without the "filing" of a complaint is patently false. *E.g.,* ORS 677.205.

Plaintiff asserts OMB "cannot resort to the more general statute in the Administrative Procedure Act." Response at 4. That, too, is simply not true. As with any state agency, OMB follows the dictates of the Oregon APA, and its protections for persons in the position of plaintiff were laid out in defendants' initial Memorandum at 17.

The Response is replete with such untruths and misstatements.

## ARGUMENT

**I.      Defendants are entitled to absolute immunity.**

The first thing this Court has to consider is the simple statement that the OMB defendants are "absolutely immune," and this is true regardless of whether they are functioning as judges or prosecutors. *Gambee v. Williams*, 971 F. Supp. 474, 477 (D. Or. 1997) ("*Gambee I*"). This has been long-established law, and frequently —and recently— re-affirmed in this District. *Gambee v. Cornelius*, 2011 WL 1311782 (D. Or. Apr. 1, 2011); and *LaTulippe v. Harder*, 2021 WL 5530945 (D. Or. Nov. 23, 2021).

Plaintiff chooses not to address these cases, mentioning them not once in his Response. But they are the governing law relating to OMB. Plaintiff, rather, claims that OMB does not enjoy immunity because he asserts it operated outside its statutory authority, and cites to *Chalkboard , Inc. v. Brandt*, 902 F.2d 1375 (9th Cir. 1889). However, this Court considered and rejected precisely that argument in *Gambee II*:

> Plaintiff's reliance on *Chalkboard, Inc. v. Brandt,* 902 F.2d 1375 (9th Cir. 1990), for the proposition that defendants' actions are not within the scope of immunity because they violated state law, is misplaced. In *Chalkboard,* the court determined that an Arizona agency did not have statutory authority to carry out an emergency closure of a day care center; that power was held by another agency. *Id.* at 1378-79. The lack of agency

authority in *Chalkboard* is not present in this case. Plaintiff does not dispute that the Board is authorized to investigate and discipline physicians or that it can effect emergency license suspensions. Thus, plaintiff's allegations are unlike those in *Chalkboard;* he simply alleges that the Board failed to properly adhere to its procedures in exercising its authority under Oregon law. As defendants note, plaintiff's various arguments that defendants skipped important steps in the process or omitted information from documents are not relevant to the absolute immunity inquiry. The acts of the Board in their exercise of statutory authority "are no less judicial or prosecutorial because they may have been committed in error." *Mishler,* 191 F.3d at 1006 (citing *Stump v. Sparkman,* 435 U.S. 349, 359 (1978)).

*Gambee*, 2011 WL 1311782 at *5

That analysis similarly disposes of plaintiff's contentions, Response at 5-13, that OMB lacks power to act where (in his conclusory assertion) there is no immediate danger to the public. OMB certainly will dispute the "lack of danger" at the appropriate time if necessary, but that, again, would constitute an allegation the Board committed an error and, under *Gambee II*, that is not a basis to strip immunity from the Board.

Plaintiff also asserts that "[t]he function of investigative work is not shielded by absolute immunity," Response at 15, relying on *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993), and further claims that OMB must show investigators Brown and Brummels are immune and that "[d]efendants make no showing at all." Plaintiff, again, is incorrect. In defendants' initial Memorandum, at 6 n. 3, they noted that "Pursuant to ORS 677.335(1), "[m]embers of the Oregon Medical Board, members of its administrative and investigative staff, medical consultants, and its attorneys acting as prosecutors or counsel shall have the same privilege and immunities from civil and criminal proceedings arising by reason of official actions as prosecuting and judicial officers of the state." In addition to the statutory protection, that the investigatory function is also entitled to immunity was made clear in *Gambee II*, at *5; *see also Wang v. N.H. Bd. of Registration in Med.*, 55 F.3d 698, 702 (1st Cir. 1995) (holding that medical board's counsel was entitled to absolute immunity for investigation surrounding disciplinary complaint); *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490–91 (10th Cir. 1991).

As a final argument, plaintiff asserts, Response at 18-29, that the Board is not immune under the *Butz* factors, factors defendants analyzed for the Court in their initial Memorandum at 7-9. Plaintiff ignores that this Court less than a year ago and in a very similar case involving a

doctor's license suspension, concluded that the *Butz* factors *were* present in the context of the OMB's operations and thus the OMB received judicial immunity. *LaTulippe*, 2021 WL 5530945, *8. Nothing has changed in the intervening nine months, and it should be noted that the *Butz* factors are an analysis of an institution's *structural* situation, not a case-by-case re-evaluation. The six factors — (1) the need to assure that the defendant can perform its functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) the agency's insulation from political influence; (4) the importance of precedent; (5) the adversary nature of the process; and (6) the correctability of error on appeal— have been found by this Court to be present. There is no need to re-visit this issue. Plaintiff's conclusory and unsupported allegations that OMB members are corrupt, or that the Board is subject to political influence, need be given no credence. This Court has, conversely, already determined that the OMB is insulated from political influence and that the administrative safeguards are sufficient. The *LaTulippe* Court once again determined the OMB is immune. Plaintiff makes no counter to *LaTulippe v. Harder*, 2021 WL 5530945 (D. Or. Nov. 23, 2021). Indeed, he doesn't even try.

## II. Plaintiff's free speech claim is not actionable. (First Claim for Relief)

### A. States can regulate professional conduct that incidentally burdens speech.

Plaintiff simply claims, without case support, that he has engaged in speech, not conduct. But his own complaint details the *treatment* he provided to patients. Am. Cp. ¶¶ 97, 99, 101, 104, 109, 112, 115, 118, 120, 122. The allegations in those paragraphs tally with acts that the Supreme Court called "professional conduct" rather than speech. *Nat'l Inst. of Family and Life Advocates v. Becerra, 138 S. Ct. 2361, 2373 (2018)* ("*NIFLA*"). Plaintiff asserts that there is no such thing as a category of "professional speech," but that is a straw man. Defendants are not saying he made unprotected speech. They are saying that, as a matter of law, the courts do not consider what he did speech at all and allow incidental burdens on whatever speech he did make

as part of his professional regulation.[1] Plaintiff simply does not respond to this argument, or even use the word "conduct" in his Response. But conduct is what is at issue here, and the OMB has the authority to regulate such conduct. *Gonzales v. Carhart*, 550 U.S. 124, 157 (2007); *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 884 (1992); *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975); *Watson v. State of Maryland*, 218 U.S. 173, 176 (1910).

Plaintiff does not respond to any of these cases, nor does he address the Ninth Circuit's regulation of what he certainly would claim is speech in *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014), *abrogated by NIFLA*, 138 S. Ct. at 2374-75, in which the court upheld a California statute banning licensed mental health providers from providing sexual orientation change therapy to minors. In *Pickup*, the Ninth Circuit clearly held that a course of treatment delivered solely through speech nonetheless was regulable conduct. By extension of that holding, the plaintiff's medical advice to his patients to forego vaccinations is, also, conduct.

### B. Plaintiff's alleged speech and the suspension are not temporally proximate.

Plaintiff points out that in addition to his 2016 book, he also referenced in his complaint a paper he published only five days before his suspension. Response at 32. Defendants overlooked that reference in the Amended Complaint. Although they maintain this argument with regard to the August 2016 book, they agree the Court should not apply the temporal proximity argument to the on-line paper cited in Am. Cp. ¶ 81.

### C. OMB's emergency order can meet any level of scrutiny.

Plaintiff did not respond to defendant's argument that rational review applies. Lacking a heightened level of scrutiny, OMB's action should be seen by this Court to be presumptively valid, resulting in the dismissal of the First Amendment Claim.

---

[1] That said, the Supreme Court did not foreclose such a possibility in the future. *NIFLA*, 138 S. Ct. at 2374.

### III. Plaintiff's right to due process has not been violated.

#### A. Procedural Due Process (Second through Fifth Claims for Relief)

Plaintiff notes he has asserted four different procedural due process claims.

The first (plaintiff's Second Claim for Relief) alleges his license was improperly suspended. He bases this conclusion on his erroneous understanding of what a "complaint" is under ORS Chapter 677. It is *not* a complaint in a form this Court would expect under Fed. R. Civ. P. 3 and 7. Is it merely a "complaint" in the generic and common English usage. It is, as is set forth in ORS 677.200(1), "A written complaint *of some person*, not excluding members or employees of the Oregon Medical Board* * *." (Emphasis added.) No special knowledge or training is required if it need only be a complaint of "some person." That provision has not been violated.

Plaintiff contends OMB did not comply with ORS 677.205(5). That law says, in its entirety, "If a license issued under this chapter is suspended, the holder of the license may not practice during the term of suspension. Upon the expiration of the term of suspension, the license shall be reinstated by the board if the conditions for which the license was suspended no longer exist." Plaintiff has not alleged his license has not been reinstated. Indeed, it is uncontested it has been. There is no other requirement or limitation on OMB action in ORS 677.205(5), so it is difficult to understand what in the law OMB is accused on not having followed. There is no "unauthorized" license suspension as a matter of law because there is no law that applies.

Second, plaintiff alleges in his Third Claim for Relief violation of due process by virtue of fabrication of evidence. What this claim amounts to is a dispute of opinion, and nothing more. Indeed, there is in the "fabrication of evidence" claim no claim of fabrication of evidence. Instead, plaintiff merely subjectively asserts that the allegations against him are "false and misleading." He claims individuals cited in the reports were not actually interviewed, but that "second-hand information" was relied upon. But he doesn't claim the investigators contended otherwise and doesn't offer a basis for the idea that such is improper to the level of a constitutional infirmity.

Not that OMB agrees with any of these spurious claims, but, again, not getting something right does not take it outside the realm of immunity. Not only does this claim not state a claim for relief, it is surely a matter for the application of immunity.

The third procedural due process claim —plaintiff's Fourth Claim for Relief— alleges supervisory liability. Here, plaintiff concedes that he is not alleging *respondiat superior* liability, which does not exist for a Section 1983 action. *Rise v. Oregon*, 59 F.3d 1556, 1563 (9th Cir. 1995) (*citing Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691-94 (1978). But then he argues that what he is suing over is that the supervisory personnel "knew of the violation and failed to take any corrective action." The term for that is, well, *respondiat superior*. Plaintiff makes an argument that is a distinction without a difference. "State officials are subject to suit under section 1983 only if 'they play an affirmative part in the alleged deprivation of constitutional rights.'" *Id*. quoting *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987); *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). "Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir.1998), *cert. denied,* 525 U.S. 1154 (1999) (citation omitted). Not involving oneself is not an "affirmative action." This claim for relief, too, should be dismissed.

The fourth and final procedural due process claim is an allegation that the statutes at issue are unconstitutionally vague (Fifth Claim for Relief). Plaintiff contends that a person of reasonable intelligence cannot understand these statutes. But he suggests *he* has no problem understanding them. Response at 36.

Plaintiffs entire argument, Response at 37, is that the statutes at issue have "no identifiable standards" and "vest[] complete discretion in the Board." *Id.* He says nothing more than that. And he cites as support only the two cases previously cited by defendants, *Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855 (1983), and *City of Chicago v. Morales,* 527 U.S. 41, 62, 119 S.Ct. 1849 (1999). These do not assist him.

To survive a vagueness challenge, a regulation must define a challenged term "(1) with sufficient definiteness that ordinary people can understand * * * and (2) in a manner that does

Page 7 -   REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

not encourage arbitrary and discriminatory [enforcement]." *Castro v. Terhune*, 712 F.3d 1304, 1311 (9th Cir. 2013) (internal quotations marks and citations omitted). When specific terms are not defined, the Court "will give them their ordinary or natural meaning," including "by looking to general usage dictionaries." *Id.* at 1312 (internal quotations marks and citations omitted).

"A plaintiff alleging facial vagueness must show that the enactment is impermissibly vague in all its applications." *Id.* at 1310 (quoting *Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1146 (9th Cir. 2009)). As a result, plaintiff here must show that the application of any of these statutes violated "both prongs." *Id.* at 1311.

Plaintiff fails this threshold inquiry. In defendants' initial Memorandum at 19-22 the comprehensibility of the statutes was discussed, and defendants will not repeat those arguments here. Plaintiff did not in his Response provide any analysis of any of the five challenged statutes demonstrating they are incapable of being understood. Nor did he offer any basis for a conclusion that each (or any) of them is impermissibly vague in *all* applications. And other than a conclusory assertion entitled to no deference under *Iqbal*, plaintiff does not make any demonstration that any of the five statutes has been arbitrarily applied.

In addition, plaintiff fails to address the issues of how the language of these statutes makes this encourage arbitrary and discriminatory enforcement. It should be noted here that any decision of the OMB is subject to review under the Oregon APA in the Oregon courts.

Given that these are facial challenges to the statutes, no development of the factual record is necessary. Disposition of the Fifth Claim for Relief on this Motion to Dismiss is appropriate.

**B.    Substantive Due Process (Sixth and Seventh Claims for Relief)**

Plaintiff recites broad brush dicta from four cases in support of his argument that he has a substantive due process claim: *County of Sacramento v. Lewis*, 523 U.S. 833 (1998); *Sagana v. Tenorio*, 384 F.3d 731 (9th Cir. 2004); *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936 (9th Cir. 2004); and *Patel v. Penman*, 103 F.3d 868 (9th Cir. 1996).

These cases have two things in common.

First, they all pre-date *Engquist v. Oregon Department of Agriculture*, 478 F.3d 895 (9th Cir. 2007) *aff'd*, 553 U.S. 591 (2009), which is cited as the standard in this area of law by both plaintiff and defendants.

Second, in all four cases, claims for substantive due process were *rejected*. *Patel* and *Squaw Valley* relate to substantive due process claims relating to regulation of *property*, and the Ninth Circuit upheld grants of summary judgment in favor of defendants in both. In *Sagana*, the appellate court noted that "the Supreme Court has never held the right to work is a fundamental right" and that work "is subject to reasonable government regulation." *Id.* at 743. And in *Lewis*, the Supreme Court rejected an expansion of the concept of substantive due process in a case dissimilar to this one relating to high-speed police motorcycle cases.

The standard for plaintiff's two substantive due process claims remains *Engquist*. That ruling makes clear that one must lose their *profession* in order to state a claim for substantive due process. Plaintiff has not lost his profession. Indeed, he is practicing this very day. His colorful analogy to being shot through the heart notwithstanding, his job, his work, his profession have not been "killed." Moreover, he in argument (but not as an allegation in the Amended Complaint), contends that "[]it is self-evident that a doctor who has been suspended from practice is unable to practice elsewhere." This is simply false. The medical profession is regulated state-by-state, and it does not follow that a suspension in one state results in a suspension elsewhere. Nowhere in the Amended Complaint is it alleged that plaintiff has lost the ability to practice in any other state. Nowhere is it alleged that plaintiff is not presently able to practice medicine in the State of Oregon.

Substantive due process has not been violated.

IV. **Alternatively, defendants are entitled to qualified immunity.**

In OMB's initial Memorandum, defendants noted that plaintiff has been unable to articulate what any member of the OMB did except to serve as a member of that Board and cast votes on his licensure by virtue of imposing the Order of Emergency Suspension, or what staff did other than prepare materials for the OMB's consideration. Initial Memorandum at 26. In

Response, plaintiff simply makes the overarching statement that "[e]ach of Dr. Thomas' constitutional claims is clearly established law* * *." Response at 40. Plaintiff then provides precisely no support for that broad brush. What plaintiff is basically arguing is that to violate someone's due process rights in unconstitutional, or to violate their free speech rights is unconstitutional. In the abstract, that may be true. But when statements are that generalized, they are abstract indeed.

Just recently, the Supreme Court in two cases clarified that a matter has to have been decided with a fairly high level of specificity in order to preclude an application of qualified immunity. *Rivas-Villegas v. Cortesluna*, 2021 WL 4822662, 595 U.S. ___ (Oct. 18, 2021); *City of Tahlequah v. Bond*, 2021 WL 4822664, 595 U.S. ___, 142 S. Ct. 9 (Oct. 18, 2021). In *Rivas-Villegas*, the Supreme Court overturned a denial of qualified immunity for an excessive force case. The Court stated that a right is only clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." 2021 WL 4822662, *8. Immunity existed because "Neither [plaintiff] nor the Court of Appeals identified any Supreme Court case that addresses facts like the ones at issue here." *Id.* at *9. The Supreme Court in the companion case, *City of Tahlequah*, noted that "We have repeatedly told courts not to define clearly established law at too high a level of generality." 2021 WL 4822664, *11.

Plaintiff wants this Court to adopt a simple formula that he can speak and defendants did something (he alleges was) in retaliation and that is all that is necessary. Plaintiff's argument inherently misapprehends the legal issue. Of course, plaintiff has a right to free speech. That is not contested, but that massively overbroad statement is precisely the kind of argument the Supreme Court tells us not to apply. The issue is not whether or not plaintiff has a right to free speech. The issue is whether defendants, in conducting a regulatory process in the form prescribed by statutes, knowingly violated that right or the due process rights alleged. In the context of statutes authorizing licensure regulation and discussed in the initial Memorandum and above, it is difficult to see how defendants would have clearly understood they had violated any

right of plaintiff.  Similarly, plaintiff would have this court reject qualified immunity in the due process claims when all he can allege the OMB did was conduct an investigation and cast votes. Plaintiff asks this court to ignore the Supreme Court and apply precisely the high level of generality that the law rejects.  But, as the Supreme Court noted, "existing precedent must have placed the statutory or constitutional question *beyond debate*." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (emphasis added).

Plaintiff provides this Court with no such precedent.

In sum, the law relating to defendants' actions not only is not "clearly established" in the manner plaintiff claims, but given the statutory requirements governing public records disclosure, defendants were obligated to act as they did.  Qualified immunity should issue.

## CONCLUSION

For the reasons set forth in defendants' initial Memorandum and in this Reply, defendants request this Court issue an Order and Judgment dismissing this action with prejudice.

DATED August 24, 2022.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

*s/ Marc Abrams*
MARC ABRAMS #890149
Assistant Attorney-in-Charge
Trial Attorney
Tel (971) 673-1880
Fax (971) 673-5000
marc.abrams@doj.state.or.us
Of Attorneys for Defendants