IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| PAUL THOMAS, MD, | Case No. 3:22-cv-00944-JR |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATION |
| KATHLEEN HARDER, SAURABH GUPTA, ERIN CRAMER, ROBERT CAHN, JAMES LACE, CHARLOTTE LIN, PATTI LOUIE, JENNIFER LYONS, ALI MAGEEHON, CHERE PEREIRA, CHRIS POULSEN, ANDREW SCHINK, JILL SHAW, ANTHONY DOMENIGONI, PAULA LEE-VALKOV, RICK GOLDSTEIN, ERIC BROWN, JASON BOEMMELS, DAVID FARRIS, | |
| Defendants. | |

RUSSO, Magistrate Judge:

Defendants Kathleen Harder, Saurabh Gupta, Erin Cramer, Robert Cahn, James Lace, Charlotte Lin, Patti Louie, Jennifer Lyons, Ali Mageehon, Chere Pereira, Chris Poulsen, Andrew Schink, Jill Shaw, Eric Brown, Jason Boemmels, and David Farris move to dismiss plaintiff Paul Thomas's complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, defendants' motion should be granted.

Page 1 – FINDINGS AND RECOMMENDATION

## BACKGROUND

Plaintiff is a pediatrician who has been practicing medicine for over thirty years. Am. Compl. ¶ 46 ([doc. 5](doc. 5)). In 2003, plaintiff began investigating the Centers for Disease Control and Prevention's ("CDC") recommended vaccine schedule and concluded that it exposed children to unsafe levels of mercury and aluminum. *Id.* at ¶¶ 51–52, 63. Plaintiff states he "has shown, with peer reviewed scientific inquiry, that children who do not follow the CDC recommended vaccine schedule are much healthier than fully vaccinated kids." *Id.* at ¶ 55.

Plaintiff opened his own clinic in 2008 and has treated over 11,000 pediatric patients in that clinic. *Id.* at ¶ 56. In 2016, plaintiff published a book that describes and advocates for an alternative vaccine schedule. *Id.* at ¶ 57. Plaintiff alleges that none of 1,000 children who followed his "vaccine-friendly plan" were diagnosed with autism, in contrast to the one in forty-five children diagnosed with autism nationally. *Id.* at ¶¶ 71–72.

According to plaintiff, defendants—members of the Oregon Medical Board ("Board")—have been "hellbent on ruining him" since 2018 and singled him out "because he dares to give parents factually accurate information about the risks of the childhood vaccines." *Id.* at ¶ 74. Between 2018 and 2020, the Board issued complaints, letters, and records requests to plaintiff, and ultimately issued an emergency suspension of plaintiff's license to practice medicine on December 3, 2020. *Id.* at ¶¶ 75–81; *see also* Defs.' Mot. Dismiss 5 ([doc. 6](doc. 6)) ("[t]he suspension lasted from December 4, 2020 through June 3, 2021"). The Board based the temporary suspension on "cases where [plaintiff's] conduct violated ORS 677.190(1)(a), as defined by ORS 677.188(4)(a), unprofessional or dishonorable conduct which exposed his patients to the risk of harm, as well as gross or repeated acts of negligence in violation of ORS 677.190(13)." Defs.' Mot. Dismiss Ex.

A, at ¶¶ 3.2–3.3 (doc. 6-1).[1] In particular, the Board found that plaintiff failed to adequately vaccinate children, document parental refusal of vaccines, and follow the appropriate standard of care. *Id.* at ¶¶ 2.2, 3.

Plaintiff alleges the Board's grounds for suspending his license "were frivolous, full of falsehoods, and failed to meet the threshold of an imminent threat to public welfare and safety." Am. Compl. ¶ 96 (doc. 5). Plaintiff disputes the extent to which he treated the patients in question and whether the injuries they suffered were a result of that treatment. *Id.* at ¶¶ 96–125.

Plaintiff initiated this lawsuit on June 30, 2022. He filed his Amended Complaint, the operative complaint here, on August 3, 2022, asserting claims against defendants under 42 U.S.C. § 1983. In particular, plaintiff alleges that defendants violated his: (1) First Amendment right to free speech, by imposing content-based restrictions on his professional speech; (2) Fourteenth Amendment right to procedural due process, by acting outside of their statutory authority to suspend his license, fabricating and supervising the fabrication of evidence, and relying on an unconstitutionally vague statute; and (3) Fourteenth Amendment right to substantive due process, by taking arbitrary and unreasonable action in suspending plaintiff's license. *Id.* at ¶¶ 33–43. As relief, plaintiff seeks "at least 35 million dollars" in damages. *Id.* at ¶ A.

---

[1] Although the complaint does not include defendants' Order of Emergency Suspension, plaintiff's allegations are based on and refer extensively to it. Am. Compl. ¶¶ 84–87, 96–126, 138–69, 181–89 (doc. 5), such that the Court considers the Order in evaluating the present motion. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("[e]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim . . . the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)") (citations omitted).

**STANDARD**

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For the purposes of a motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983). Regardless, bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Bacca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

**DISCUSSION**

Defendants assert that plaintiff's claims fail because, among other reasons, (1) they are entitled to absolute judicial immunity or, alternatively, qualified immunity; and (2) the challenged statutes are not unconstitutionally vague.

**I.  Absolute Judicial Immunity**

State officials may be absolutely immune to suit if the challenged actions are functionally comparable to those of a prosecutor or judge. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 923 (9th Cir. 2004). In *Butz v. Economou*, the Supreme Court identified several factors to determine whether official conduct resembles judicial or prosecutorial conduct such that the official should be immune. 438 U.S. 478, 512–13 (1978).

It is well established that, under the *Butz* factors, the Board is absolutely immune for the quasi-judicial and quasi-prosecutorial actions it took to suspend plaintiff's license. *See, e.g.*,

*LaTulippe v. Harder*, 574 F. Supp. 3d 870, 882–83 (D. Or. 2021) (members of Oregon Medical Board absolutely immune for judicial acts related to suspension of a physician's license); *Gambee v. Williams*, 971 F. Supp. 474, 477 (D. Or. 1997) (members of Oregon Board of Medical Examiners absolutely immune for "acts performed in their statutory capacity as quasi-judicial prosecutors or judges"); *Olsen*, 363 F.3d at 925–26 (members of Idaho State Board of Professional Discipline absolutely immune for non-ministerial acts related to disciplinary hearing process concerning a physician assistant's license); *Mishler v. Clift*, 191 F.3d 998, 1007 (9th Cir. 1999) (members of Nevada State Board of Medical Examiners absolutely immune for quasi-judicial acts in disciplinary process to revoke a physician's license); *Buckwalter v. Nev. Bd. of Med. Exam'rs*, 678 F.3d 737, 742 (9th Cir. 2012) (members of Nevada State Board of Medical Examiners absolutely immune for suspending a physician's authority to prescribe medication because "the Board Members' summary suspension power is analogous to a judicial function"). Indeed, the Ninth Circuit has expressly stated "[t]here is no question that acts occurring during the disciplinary hearing process fall within the scope of absolute immunity; holding hearings, taking evidence, and adjudicating are functions that are inherently judicial in nature." *Mishler*, 191 F.3d at 1008.

Plaintiff makes little attempt to distinguish or even acknowledge these cases, and instead argues that defendants exceeded their statutory authority under ORS 677.205 and are thus not entitled to absolute immunity, per the Ninth Circuit's holding in *Chalkboard, Inc. v. Brandt*, 902 F.2d 1375 (9th Cir. 1989). Specifically, plaintiff disputes the Board's compliance with the statute because the Board issued its emergency suspension on December 3, 2020, and did not file a complaint until April 22, 2021. Am. Compl. ¶¶ 81, 84 (doc. 5).

Initially, this District has explicitly rejected a virtually identical argument. *See Gambee v. Cornelius*, 2011 WL 1311782, at *5 (D. Or. Apr. 1, 2011) ("[p]laintiff's reliance on *Chalkboard,*

Page 5 – FINDINGS AND RECOMMENDATION

*Inc. v. Brandt*, 902 F.2d 1375 (9th Cir.1990), for the proposition that defendants' actions are not within the scope of immunity because they violated state law, is misplaced").

Further, ORS 677.205(3) merely provides that "the board may temporarily suspend a license without a hearing, simultaneously with the commencement of proceedings under ORS 677.200[.]" ORS 677.200, in turn, requires that "any proceeding for disciplinary action . . . be substantially in accord with" the stated procedure, requiring a written complaint and a hearing. Thus, ORS 677.205(3) requires only the simultaneous *commencement* of disciplinary proceedings, not the simultaneous filing of a complaint or holding of a hearing. There is no well-pleaded factual content in the complaint indicating that defendants failed to commence or adhere to the proper procedures upon the emergency suspension of plaintiff's license, but even if they did, defendants' actions "are no less judicial or prosecutorial because they may have been committed in error." *Mishler*, 191 F.3d at 1006. Accordingly, defendants did not act outside of their statutory authority such that they should be denied absolute immunity.

All but one of plaintiff's claims challenge the Board's investigation, documentation, and adjudication of his license suspension.[2] None of the actions challenged are ministerial such that they fall outside the scope of judicial immunity articulated in *Mishler*. Accordingly, defendants' motion should be granted as to all but plaintiff's Fifth Claim for Relief.

## II. Qualified Immunity

Defendants contend that even if they are not subject to absolute judicial immunity, they are entitled to qualified immunity. State officials enjoy qualified immunity if they rely on established law, or if they reasonably misapprehend the applicable law. *Brosseau v. Haugen*, 543 U.S. 194,

---

[2] The only claim that falls outside the ambit of absolute immunity is plaintiff's Fifth Claim for Relief, which alleges that the statutes relied on by the Board are unconstitutionally vague. That claim is discussed in Section III, below.

Page 6 – FINDINGS AND RECOMMENDATION

198 (2004). "If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Id.* Under *Saucier v. Katz*, the relevant question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." 533 U.S. 194, 202 (2001). This standard protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

Here, plaintiff alleges the board members violated his constitutional rights by fabricating evidence,[3] investigating him, and suspending his medical license. Am. Compl. ¶¶ 33–43 (doc. 5). No precedent clearly establishes the illegality of defendants' actions; to the contrary, the Board acted under explicit statutory authority that allows it to initiate investigations and prosecute disciplinary actions against licensees. ORS 677.320, 677.200. Accordingly, even if defendants are not absolutely immune, they should be entitled to qualified immunity from damages.

## III. Unconstitutionally Vague Statutes

Plaintiff alleges that the statutes governing his license suspension are unconstitutionally vague in violation of his procedural Due Process rights. Am. Compl. ¶¶ 170–80 (doc. 5). Specifically, plaintiff argues ORS 677.190(1)(a) (as defined in ORS 677.188(4)), ORS 677.190(13), ORS 677.205(3), and ORS 183.430(2) are impermissibly vague because they do not "giv[e] a person of reasonable intelligence notice that [his] conduct of providing informed consent,

---

[3] Plaintiff makes only vague and conclusory assertions that defendants Brown and Boemmels "wrote false and misleading allegations" when investigating, and that the other defendants "knew of the fabrication of evidence and failed to act to prevent it." Am. Compl. ¶¶ 149–69 (doc. 5). These allegations, without more, fail to establish a plausible claim for relief. Additionally, "[i]t is well established that section 1983 does not impose liability upon state officials for the acts of their subordinates under a respondeat superior theory of liability," so plaintiff's claims against the supervising defendants also fail in that regard. *Rise v. Oregon*, 59 F.3d 1556, 1563 (9th Cir. 1995) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–94 (1978)).

Page 7 – FINDINGS AND RECOMMENDATION

or that improving the health of children, is a violation." *Id.* In contrast, defendants assert the standards in those statutes are "highly specific" and "identifiable," and that plaintiff merely disagrees with the standards as enforced. Defs.' Mot. Dismiss 26–29 (doc. 6).

A statute violates the Fourteenth Amendment if it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).[4] But "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *United States v. Williams*, 553 U.S. 285, 304 (2008). The proscribed conduct need not be specifically defined; rather, standards may be "measured by common understanding and practices[.]" *Roth v. United States*, 354 U.S. 476, 491 (1957) (quotation marks and citation omitted).

The level of scrutiny applied to the challenged statute depends on the statute's purpose and its penalties. The Supreme Court has noted that "economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498–99 (1982). Further, vagueness challenges face an uphill battle: "Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) (quotation marks omitted).

The challenged statutes are part of the state's regulation of medical providers. Similar to economic regulations, these laws should be subject to less scrutiny than criminal statutes regulating

---

[4] The only statute plaintiff alleges that is subject to arbitrary enforcement is ORS 677.190(1)(a), so this Court addresses only the prong of the inquiry relating to that statute. *See* Am. Compl. ¶ 174 (doc. 5).

Page 8 – FINDINGS AND RECOMMENDATION

layperson conduct because medical providers can be expected to consult the governing bodies about appropriate standards of conduct. Additionally, ORS 677.205—the statute providing the basis of plaintiff's license suspension—calls only for civil penalties, not criminal, further weighing in favor of less scrutiny. ORS 677.205(7). Regardless of the level of scrutiny applied, however, the overwhelming majority of cases support a finding that none of the challenged provisions are unconstitutionally vague, as detailed below.

### A. ORS 677.190(1)(a), as defined by ORS 677.188(4)

ORS 677.190(1)(a) enables the Board to suspend or revoke a physician's license for "[u]nprofessional or dishonorable conduct." That phrase is defined as "conduct unbecoming [of] a person licensed to practice medicine . . . or detrimental to the best interests of the public," including "any conduct or practice which does or might constitute a danger to the health or safety of a patient or the public," and the "[w]illful performance of any . . . medical treatment which is contrary to acceptable medical standards." ORS 677.188(4)(a)–(b).

At the outset, plaintiff is correct that these statutes do not specify that providing informed consent or improving children's health are punishable. Contrary to plaintiff's assertions, however, defendants did not suspend his license for doing either of those things. Rather, the Board cited several instances of plaintiff's unprofessional conduct, including his failure to refer sick patients for additional testing, failure to document informed consent discussions, and failure to administer necessary vaccines as required by the standard of care.[5] *See generally* Defs.' Mot. Dismiss Ex. A

---

[5] Defendants' Order of Emergency Suspension states, in part: "When making determinations about professional conduct, negligence and gross negligence in the practice of medicine, the Board relies upon sources that are well recognized in the medical community and are relied upon by physicians in their delivery of care to their patients. [The CDC's recommended vaccine schedule] provides a series of vaccinations for children that start at birth and continue through the ages of childhood to provide immunizations for number of diseases that are potentially debilitating or fatal [and are] preventable . . . This schedule has been relied upon for many years, is updated periodically, and is

Page 9 – FINDINGS AND RECOMMENDATION

(doc. 6-1). Concerning the latter, plaintiff's complaint acknowledges that he did not provide information or childhood vaccinations in accordance with the CDC's guidelines. Plaintiff also does not meaningfully dispute several other aspects of the Board's Order. The statute authorizes the Board to initiate disciplinary action for a single "practice" or "performance." ORS 677.188(4)(a)–(c).

In any event, courts have widely upheld statutes with similar language. First, Oregon courts have specifically upheld ORS 677.190(1)(a) and a similar statute regulating dentists' conduct. *Bennett v. Bd. of Med. Exam'rs*, 31 Or. App. 467, 470, 570 P.2d 986 (1977) (ORS 677.190(1)(a) was not unconstitutionally vague or overbroad) (citing *Bd. of Med. Exam'rs v. Mintz,* 233 Or. 441, 378 P.2d 945 (1963)); *see also Hurley v. Or. State Bd. of Dental Exam'rs*, 29 Or. App. 223, 225–26, 562 P.2d 1229 (1977) ( "unprofessional conduct" as used in ORS 679.140(1)(c) was not unconstitutionally vague); *Megdal v. Or. State Bd. of Dental Exam'rs*, 288 Or. 293, 298, 605 P.2d 273 (1980) (same).

---

widely accepted as authoritative in the medical community. . . . Licensee has breached the standard of care and has placed the health and safety of many of his patients at serious risk of harm" by "publish[ing] an alternative vaccination schedule that decreases the frequency of many recommended vaccines and omits others" and "fraudulently assert[ing] that following his vaccine schedule will prevent or decrease the incidence of autism and other developmental disorders. Licensee uses this claim to solicit parental 'refusal' of full vaccination for their children, thereby exposing them to multiple potentially debilitating and life-threatening illnesses[.]" Defs.' Mot. Dismiss Ex. A, at ¶¶ 2–3.2.2 (doc. 6-1). Consistent therewith, Oregon law specifies that parents who seek to exempt their child from the state's immunization requirements must provide either: (1) proof of an "indicated medical diagnosis" from "a physician or a representative of the local health department"; or (2) a written form "signed by the parent" indicating they received vaccine educational training from their health care provider or otherwise sanctioned by the Oregon Health Authority "about the risks and benefits of immunization that is consistent with information published by the Centers for Disease Control and Prevention." ORS 433.267(1)(b)–(c); OAR 333-050-0010–333-050-0140.

Notably, in *Mintz*, a case concerning a physician, the Oregon Supreme Court found that, because "the standards [of unprofessional conduct] are those which are accepted by the practitioners in the community," the Board's discretion is not unfettered and the standard is not unconstitutionally vague. 233 Or. at 448. "The fact that it is impossible to catalogue all of the types of professional misconduct is the very reason for setting up the statutory standard in broad terms and delegating to the board the function of evaluating the conduct in each case." *Id.*

Second, courts have generally approved of standards similar to the statute's reference to "unprofessional," "dishonorable," or "unbecoming" conduct. *See, e.g.*, *Parker v. Levy*, 417 U.S. 733, 757 (1974); *Janusaitis v. Middlebury Volunteer Fire Dept.*, 607 F.2d 17, 27–28 (2d Cir. 1979); *In re Bithoney*, 486 F.2d 319, 324 (1st Cir. 1973); *Anderson v. Evans*, 660 F.2d 153, 160 (6th Cir. 1981); *Dilliard v. State Bd. of Med. Exam'rs*, 69 Colo. 575, 577–78, 196 P. 866 (1921); *but see Bence v. Breier*, 501 F.2d 1185, 1190 (7th Cir. 1974) (invalidating police department rule proscribing "conduct unbecoming a member and detrimental to the service").[6]

Some courts' reasoning suggests that, while broad in itself, this statutory language may be narrowed by context, and that generally observable codes of conduct may inform the standard. *See In re Bithoney,* 486 F.2d at 324–25 ("when placed in context, as part of a rule directed to a discrete professional group, the terms [took] on definiteness and clarity. The legal profession has developed

---

[6] In *Bence*, the Seventh Circuit found that "'unbecoming' and 'detrimental to the service' have no inherent, objective content from which ascertainable standards defining the proscribed conduct could be fashioned. Like "beauty," their content exists only in the eye of the beholder. The subjectivity implicit in the language of the rule permits police officials to enforce the rule with unfettered discretion, and it is precisely this potential for arbitrary enforcement which is abhorrent to the Due Process Clause . . . There is simply no benchmark against which the validity of the application of the rule in any particular disciplinary action can be tested." 501 F.2d at 1190. Unlike those standards and unlike beauty, here, the community's medical standards and patients' health provide verifiable benchmarks against which the Board can measure licensees' conduct.

over a considerable period of time a complex code of behavior and it is to that code that such words as 'conduct unbecoming a member of the bar' refer.").

Third, courts have rejected vagueness challenges to statutory text referencing patient and public health. *See, e.g.*, *United States v. Vuitch*, 402 U.S. 62, 71–72 (1971); *Reid v. Engen*, 765 F.2d 1457, 1463 (9th Cir. 1985); *ETP Rio Rancho Park, LLC v. Grisham*, 522 F. Supp. 3d 966, 1034–39 (D. N.M. 2021); *Nnebe v. Daus*, 665 F. Supp. 2d 311, 332–33 (S.D. N.Y. 2009). These courts found that "general usage and modern understanding" inform the interpretation of "health" standards such that an ordinary person can understand their meaning. *See Vuitch*, 402 U.S. at 72.

Finally, statutes requiring a doctor's judgment or referring to generally acknowledged professional standards also withstand Due Process challenges. *See, e.g.*, *Doe v. Bolton*, 410 U.S. 179, 191–92 (1973); *Varandani v. Bowen*, 824 F.2d 307, 311–12 (4th Cir. 1987); *Waltz v. Herlihy*, 682 F. Supp. 501, 507–08 (S.D. Ala. 1988). Courts note the need for a practical standard measured by generally accepted practices, and the legislature's inability to prescribe exact standards for the evolving medical field. *See Waltz*, 682 F. Supp. at 507–08 (upholding statute in the context of the statutory scheme and "in conjunction with medical norms and standards"); *Varandani*, 824 F.2d at 312 ("[t]he definition of adequate medical care cannot be boiled down to a precise mathematical formula; it must be grounded in what, from time to time, other health professionals consider to be acceptable standards of health care").

Similarly, the court in *Rathle v. Grote* commented on the particular difficulty of regulating the medical profession with precision:

> The health sciences are dynamic and, as a result, it is impossible to compile a list of every conceivable form of "acceptable" and "unacceptable" medical practice. Courts have therefore recognized that "statutes affecting medical practice need not delineate the precise circumstances constituting the bounds of permissible practice." Instead, the health professions are regulated by statutes of general

> terminology, complemented by continually evolving and changing non-statutory standards fashioned to meet contemporary norms.

584 F. Supp. 1128, 1132 (M.D. Ala. 1984) (upholding a statute providing for suspension of a physician's license if the physician practices "in such a manner as to endanger the health of [his or her] patients") (citations omitted).

In contrast to all these cases, in *Tucson Woman's Clinic v. Eden*, the Ninth Circuit struck down a statute requiring doctors to treat patients "with consideration, respect, and full recognition of the patient's dignity and individuality," because those words are subjective and "widely variable." 379 F.3d 531, 554–55 (9th Cir. 2004).

Based on this precedent and the statute's plain language, plaintiff was on notice of what conduct would run afoul of the statute's prohibition on "[u]nprofessional or dishonorable conduct" that endangers public health or contradicts "acceptable medical standards." As defendants note, "certainly putting others at risk of infection with a communicable disease" constitutes a danger to public health. Defs.' Mot. Dismiss 25 (doc. 6). The statute also provides sufficiently workable standards for the enforcing officials, who must explain why the licensee's conduct is contrary to these standards, as the Board did here. Like in *Mintz*, the Board does not have unfettered discretion to arbitrarily enforce vague rules. In sum, although the standards in ORS 677.190(1) are necessarily broad, they are not so vague as to interfere with plaintiff's Due Process rights.

### B. ORS 677.190(13)

ORS 677.190(13) enables the Board to suspend or revoke a physician's license due to "gross negligence or repeated negligence in the practice of medicine[.]" This standard is informed by ORS 677.265(1)(c), which prescribes a physician's standard of care as "that degree of care, skill and diligence that is used by ordinarily careful physicians in the same or similar circumstances in the community of the physician or a similar community."

Page 13 – FINDINGS AND RECOMMENDATION

Courts have rejected vagueness challenges to language similar to that in ORS 677.190(13). *See, e.g.*, *Panther v. Hames*, 991 F.2d 576, 578–80 (9th Cir. 1993). These courts, in line with those cited above, reason that common sense and understanding may inform and supplement statutory standards. *Id.*; *see also Ketchum v. Ward*, 422 F. Supp. 934, 940 (W.D. N.Y. 1976), *aff'd*, 556 F.2d 557 (2d Cir. 1977) (upholding a criminal negligence statute because the definitions therein contained a "wealth of common meaning").

Negligence is a standard commonly used by legislatures, employed by courts, and interpreted by juries, and is not impermissibly vague. The standard of care gave plaintiff sufficient notice that "[k]nowingly leaving . . . children inadequately protected against a preventable, potentially debilitating illness" is prohibited, because that is not something an ordinarily careful physician would do. Defs.' Mot. Dismiss Ex. A, at ¶ 3.5 (doc. 6-1).

C. **ORS 183.430(2) and 677.205(3)**

ORS 183.430(2) is a part of Oregon's Administrative Procedures Act, and provides that where an "agency finds a serious danger to the public health or safety and sets forth specific reasons for such findings, the agency may suspend or refuse to renew a license without [a] hearing[.]" ORS 677.205(3) enables the Board to temporarily suspend a physician's license if it finds the physician's practice "constitutes an immediate danger to the public." Again, courts have upheld statutes with similar provisions. *See DiBlasio v. Novello*, 413 Fed. Appx. 352, 358 (2d Cir. 2011) (upholding a statute allowing a state official to revoke a license if the physician poses an "imminent danger" to the public). Likewise, in *Nnebe*, the court held that taxi drivers of ordinary intelligence would understand that arrest for a violent or felony offense could warrant suspension of their license under a statute precluding "direct and substantial threat[s] to the public health." 665 F. Supp. 2d at 333.

Applying this commonsense view, a person of ordinary intelligence—much more, a licensed physician—could understand that the failure to, among other things, provide vaccine guidance consistent with the CDC's recommendations to protect children from communicable diseases would constitute "a serious danger to the public health" and/or pose "an immediate danger to the public." Plaintiff's vagueness challenge to ORS 183.430(2) and 677.205(3) should fail.

## RECOMMENDATION

For the foregoing reasons, defendants' Motion to Dismiss ([doc. 6](#)) should be granted. Plaintiff's request for oral argument is denied as unnecessary. Any motion to amend the complaint must conform with this Findings and Recommendation and [Fed. R. Civ. P. 8(a)](#), and be filed within 30 days of the District Judge's order.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 11th day of October, 2022.

                                          /s/ Jolie A. Russo
                                              Jolie A. Russo
                                    United States Magistrate Judge