Stephen J. Joncus
Oregon Bar No. 013072
JONCUS LAW P.C.
13203 SE 172nd Ave Ste 166 #344
Happy Valley, Oregon 97086
Telephone: (971) 236-1200
Facsimile: (971) 244-7997
steve@joncus.net

*Attorney for Paul Thomas, M.D.*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| Paul Thomas, MD,<br><br>         Plaintiff<br><br> v.<br><br>Kathleen Harder, MD; Saurabh Gupta, MD; Erin Cramer, PA-C; Robert Cahn, MD; James Lace, MD; Charlotte Lin, MD; Patti Louie, PhD; Jennifer Lyons, MD; Ali Mageehon, PhD; Chere Pereira; Chris Poulsen, DO; Andrew Schink, DPM; Jill Shaw, DO; Eric Brown; Jason Boemmels; and David Farris, MD,<br><br>         Defendants. | Case No. 3:22-cv-944-JR<br><br><br><br>**Paul Thomas' Objections to the Findings and Recommendations** |

1. **The Finding that the Board members are absolutely immune is incorrect**.

The Findings and Recommendations ("Findings")[1] erroneously concludes that the Board members[2] are absolutely immune by asserting that a virtually identical argument has already been dismissed by this Court eleven years ago.[3] *Gambee* is distinguishable. In *Gambee*, the doctor alleged that rules were not followed, such as OAR 137-003-0560. In contrast, this Board members in this case acted outside of their authority granted by the legislature in a statute.[4]

Under the statute, the Board *may only* issue an emergency suspension *if* it simultaneously files a written and verified complaint.[5] The Board's power is limited to the authority that has been granted to it. For an act of the Board to be a quasi-judicial function entitled to absolute immunity, it must be authorized by the legislature.[6] The Board members did not have the power to issue an emergency suspension without simultaneously filing a verified written complaint. Because the Board members failed to

---

[1] Doc. No. 11.
[2] The Defendants who are Board members are: Kathleen Harder, MD; Saurabh Gupta, MD; Erin Cramer, PA-C; Robert Cahn, MD; James Lace, MD; Charlotte Lin, MD; Patti Louie, PhD; Jennifer Lyons, MD; Ali Mageehon, PhD; Chere Pereira; Chris Poulsen, DO; Andrew Schink, DPM; and Jill Shaw, DO.
[3] Findings at pp. 5-6 (citing *Gambee v. Cornelius*, 10-cv-6265, 2011 U.S. Dist. LEXIS 35944 at * 5 (D. Or. Apr. 1, 2011)).
[4] *See* Opp'n to Mtn. to Dismiss, Doc. No. 8 ("Opp'n Br.") pp. 2-5.
[5] *Id*. at p. 2 (citing ORS 677.205(3) and ORS 677.200.
[6] *Chalkboard v. Brandt*, 902 F.2d 1375, 1379 (9th Cir. 1989).

act within their jurisdictional authority granted by the legislature they are not entitled to absolute immunity.[7]

The Findings erroneously read the applicable statutes.[8] The statutes require that a verified complaint be filed to commence disciplinary proceedings *simultaneously* with the emergency suspension.[9]

The Findings erroneously assert that the Amended Complaint failed to allege the Board's failure to simultaneously file a verified complaint.[10] That fact is indeed alleged in the Amended Complaint at paragraph 84.

In general, the Findings erroneously conflate an error in procedure with a lack of jurisdiction.[11] The Findings cite *Mishler*,[12] but that case does not address the difference between procedural errors and lack of jurisdiction for an administrative body. *Chalkboard* does address the difference. To maintain absolute immunity, the members of the Oregon Medical Board members must operate within their statutory authority. By arrogating to themselves the authority to issue an emergency suspension *without*

---

[7] *See Chalkboard,* 902 F.2d at 1379.
[8] Findings p. 6.
[9] ORS 677.205(3), ORS 677.200.
[10] Findings at p. 6.
[11] Findings at p. 6.
[12] *Mishler v. Clift,* 191 F.3d 998, 1006 (9th Cir. 1999).

simultaneously filing a verified complaint, the Board members are not entitled to absolute immunity.[13]

2. **The Findings erroneously fail to address other reasons why the Board members acted without jurisdiction and therefore do not have absolute immunity.**

The Board members do not have the power to suspend Dr. Thomas' license unless it has evidence that Dr. Thomas presents an immediate danger to the public.[14] Similarly, the Board members do not have the power to suspend Dr. Thomas' license on the basis of an imaginary requirement.[15]

The Findings apparently dismiss these arguments because the challenged suspension was not a ministerial act.[16] But, ministerial acts are not the only acts unprotected by absolute immunity. Absolute immunity is also not conferred on Board members when they act outside of the power granted by the legislature.[17]

The Findings erred by failing to address these additional abuses of power that are not entitled to absolute immunity.

---

[13] *See Chalkboard*, 902 F.2d at 1380.
[14] Opp'n Br. pp. 5-8.
[15] Opp'n Br. pp. 8-13.
[16] Findings p. 6.
[17] *Chalkboard*, 902 F.2d at 1379-80.

3. **The Finding erroneously fail to recognize that the function of investigating is not entitled to absolute immunity**.

Defendants Eric Brown, Jason Boemmels, and David Farris are not members of the Board—they are employees. The forgoing argument deals with the Defendants who are members of the Board who took the action to suspend Dr. Thomas' license. In contrast Brown, Boemmels and Farris are not members of the Board and they do not perform the function of judging. They are therefore not entitled to absolute immunity conferred on bureaucrats who perform the function of judging.

Brown and Boemmels perform the function of investigating. The function of investigating is not shielded by absolute immunity.[18] The burden was on Brown and Boemmels to show that their function is protected by absolute immunity, and they made no showing at all.

The Findings incorrectly lumped all the Defendants together in its analysis and failed to articulate reasons why Brown and Boemmels are entitled to absolute immunity.

The Findings also attempt to side-step this issue by asserting that the allegations as to wrongdoing by Brown and Boemmels are vague and conclusory.[19] This

---

[18] Opp'n Br. pp. 14-16.
[19] Findings p. 7 n. 3.

argument is irrelevant to whether the function of investigating is entitled to absolute immunity.

It is also wrong because the allegations are quite detailed as to the false allegations and fabricated evidence that resulted from the investigation by Brown and Boemmels.[20] This is another example (elaborated on further below) where the Findings fail to treat Dr. Thomas' allegations and true and construe them in Dr. Thomas' favor.

The Findings also erroneously dispose of Claim Four, Supervisory Liability, on the grounds that there is no respondeat superior theory of liability under section 1983.[21] Dr. Thomas is not asserting vicarious liability; he is asserting supervisory liability; there is a difference.[22]

4.  **The Finding erroneously fail to recognize that the function of supervising is not entitled to absolute immunity**.

The function of supervising does not entitle either the members of the Board or Executive Director Farris to absolute immunity.[23] The burden was on the Board members and Farris to show that their function of supervising is protected by absolute immunity, and they failed to make any showing at all. The Findings incorrectly lumped

---

[20] Am. Compl. ¶¶ 21, 22, 96-123, 149-169.
[21] Findings p. 7 n. 3.
[22] *See e.g.*, *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (There is no respondeat superior liability under section 1983, but a supervisor is liable for constitutional violations of his subordinates if the supervisor knew of the violations and failed to act to prevent them.)
[23] Opp'n Br. pp. 17-18.

all of the Defendants together in its analysis and failed to articulate why the Board members and Farris are absolutely immune for the function of supervising.

5. **The Finding erroneously fail to apply the *Butz* factors to the actions by the Board members**.

The Findings improperly rely on other cases finding that medical board members were absolutely immune, without going through the *Butz* factors on facts of this case. Those cases are resolved on different facts. The fact scenario in each case needs to be analyzed under the *Butz* factors and the Findings fail to do that. Dr. Thomas explained how the *Butz* factors do not apply to the actions by the Board.[24] The Findings erroneously fail to address any of the *Butz* factors as applied to the facts of this case.

6. **The Finding consistently fail to treat Dr. Thomas' allegations as true.**

The Findings have a lengthy discussion of whether the statutes are unconstitutionally vague. In its lengthy discussion, the Findings consistently fail to take Dr. Thomas' allegations as true and construe them in favor of Dr. Thomas. Rather the Findings dismiss Dr. Thomas' allegations as to why the Board dismissed his license[25] and adopt Defendants' version of the facts which is not permitted in evaluating a motion to dismiss.

---

[24] Opp'n Br. pp. 18-29.
[25] *E.g.*, Findings p. 9 ("Contrary to plaintiff's assertions, however, defendants did not suspend his license for doing either of those things.")

Accepting Dr. Thomas' allegations as true means among other things, the Court must accept as true and construe in favor of Dr. Thomas the following allegations:

- Unvaccinated children are much healthier than vaccinated children.[26]

- In 1983 children received 11 shots and now in 2017 the recommended CDC schedule is for 53 shots.[27]

- Prior to 1986 the prevalence of autism was 2 to 4 cases per 10,000 whereas today one in every forty-five children has an autism spectrum disorder.[28]

- That among the more than 1,000 patients of Dr. Thomas, not one was diagnosed with autism, whereas 1 in 45 who follow the CDC schedule are diagnosed with autism.[29]

- The significant increase in the number of vaccines recommended for children parallels the dramatic decrease in the health of American children over the same period.[30]

- That the CDC recommended schedule was poisoning children with mercury byrecommending vaccines that dose them with 125 times what is considered the safe limit.[31]

---

[26] Am. Compl. (Doc. No. 5) ¶ 55.
[27] Am. Compl. ¶¶39-42.
[28] Am. Comp. ¶¶
[29] Am. Comp. ¶¶ 71-72.
[30] Am. Compl. ¶¶ 38-45.
[31] Am. Compl. ¶¶ 51, 63.

- That just one vaccine, the hepatitis B vaccine on the CDC recommended schedule is poisoning children with 15 times what might be a safe limit for aluminum.[32]

- Infants have no risk of contracting a sexually transmitted disease and receive no benefit from the hepatitis B vaccine.[33]

- Product liability law has been eliminated for childhood vaccines.[34]

- Government regulation of the vaccine industry is rife with conflicts of interest.[35]

- That the CDC schedule poisoned children with mercury and aluminum.[36]

- There is no science in support of the contention that the CDC recommended schedule is safe because the CDC recommendations have never been tested as a whole.[37]

- The Board seeks to destroy Dr. Thomas and punish him because he is challenging the sacred cow of childhood vaccines.[38]

---

[32] Am. Compl. ¶¶ 65-67.
[33] Am. Compl. ¶¶ 68-69.
[34] Am. Compl. ¶ 37.
[35] Am. Compl. ¶ 36.
[36] Am Compl. ¶¶ 51-52.
[37] Am. Compl. ¶95.
[38] *E.g.*, Am. Compl. ¶¶ 54-55, 75-78

- That just days after Dr. Thomas published a study conclusively showing that completely unvaccinated children were much healthier than vaccinated children, the Oregon Medical Board suspended his license.[39]

- Rather than being interested in the health of children the Oregon Medical Board is interested in enforcing compliance with the sacred cow of childhood vaccines.[40]

- That there was no emergency justifying the suspension of Dr. Thomas' license.[41]

- That nothing cited by the Board in their suspension order showed that Dr. Thomas presented a danger to the public.[42]

- The allegations against Dr. Thomas cited in the suspension order were fabrications based on lies which was known by each of the Defendants.[43]

- The Boards emergency suspension order was designed to smear Dr. Thomas.[44]

---

[39] Am. Compl. ¶ 81-82.
[40] Am. Compl. ¶¶ 82-83.
[41] Am. Compl. ¶¶ 86-87.
[42] Am. Compl. ¶ 184.
[43] Am. Compl. ¶¶ 96-126, 149-151, 156-168.
[44] Opp'n Br. pp. 27-29.

- The Federation of State Medical Boards is controlled by big pharmaceutical companies.[45]

- The Federation of State Medical Boards has undue influence over the Oregon Medical Board.[46]

- That the Federation of State Medical Boards sought to silence Dr. Thomas pressured the Oregon Medical Board to take action.[47]

- The act of the Oregon Medical Board was intended to silence Dr. Thomas.[48]

- There is no law or rule concerning the content of physician speech regarding vaccines.[49]

In short, Dr. Thomas' allegations demonstrate that he is providing care and advice that makes his patients healthier than children who follow the CDC recommendations. Objectively, Dr. Thomas is exceeding the standard of care by miles.

The Findings ignored all of Dr. Thomas' allegations and instead decided that Defendants' allegations were correct when it concluded that the failure to provide vaccine guidance in accordance with the CDC schedule would constitute a serious danger to public health or an immediate danger to public health. The Findings adopt

---

[45] Am. Compl. ¶¶ 128-134.
[46] Am. Compl. ¶¶ 135-137.
[47] Am. Compl. ¶ 137.
[48] Am. Compl. ¶ 93-94, 141-142.
[49] Am. Compl. ¶ 141.

Defendants' version of the facts where the only thing that matters is the prevention of communicable disease. It matters not that the childhood vaccines are causing massive and irreversible injuries, such as autism and many other maladies. The Findings could only reach this conclusion by violating the fundamental law governing motions to dismiss that the plaintiff's allegations must be taken as true and construed in his favor.

If the statutes are broad enough to allow the Board to discipline a doctor on the grounds that the doctor failed to follow the standard of care when, in fact, the doctor's objective performance dramatically exceeds the standard of care, the statutes are unconstitutionally vague.

7. **The Finding misapplies the law of qualified immunity.**

The Findings misapply the law on qualified immunity.[50] The question is not whether the Board has statutory authority to conduct investigations—it is whether the allegations of harm caused by the Board constitute violations of a clearly established constitutional right.[51] If the Findings were correct, then there is nothing that the Board could do that could constitute a violation of constitutional rights while it was performing its investigation and prosecution function. That logic turns the law on its head. For example, the Board's statutory right to investigate do not confer the right to barge into Dr. Thomas' office and seize evidence without a warrant—its right to

---

[50] Findings p. 6-7.
[51] Opp'n Br. p. 40.

investigate and prosecute would not justify such a constitutional violation under the Fourth Amendment. The same is true for Dr. Thomas' First Amendment and Fourteenth Amendment rights. The Board's statutory right to investigate do not confer the right to violate Dr. Thomas' free speech and due process rights. The existence of a statutory right to investigate does not give the Board carte blanche to do whatever it pleases.

The Board may investigate and prosecute, but it must do so within the boundaries of individual rights under the United States Constitution. That it has authority to investigate and prosecute, is no answer to whether it has violated clearly established constitutional rights.

The Findings are incorrect and should be rejected. The Court should enter an order denying Defendants' Motion to Dismiss.

Dated: October 25, 2022     By:     s/ *Stephen J. Joncus*
                                    **Stephen J. Joncus**, OSB No. 013072
                                    Email: steve@joncus.net
                                    JONCUS LAW P.C.
                                    13203 SE 172nd Ave Ste 166 #344
                                    Happy Valley, Oregon 97086
                                    Telephone: (971) 236-1200
                                    Facsimile: (971) 244-7997
                                    steve@joncus.net

                                    *Attorney for Plaintiff*