IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PAUL THOMAS, MD**, | Case No. 3:22-cv-944-JR |
| Plaintiff, | **ORDER** |
| v. | |
| **KATHLEEN HARDER**, *et al.*, | |
| Defendants. | |

**Michael H. Simon, District Judge.**

United States Magistrate Judge Jolie A. Russo issued Findings and Recommendation (F&R) in this case on October 11, 2022. Judge Russo recommended that this Court grant Defendants' motion to dismiss.

Under the Federal Magistrates Act (Act), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3). For those portions of a magistrate judge's findings and recommendations to which neither party has

objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

Plaintiff timely filed an objection, to which Defendants responded by incorporating by reference their briefing on the motion to dismiss before Judge Russo. Plaintiff raises several objections. The Court addresses each in turn.

**1. Absolute Immunity of OMB Members**

Plaintiff's first objection is that the F&R erroneously recommended that Defendants are entitled to absolute immunity. Plaintiff argues that Defendant members of the Oregon Medical Board (OMB) acted outside their statutory authority because they did not comply with the procedures established under Oregon Revised Statutes (ORS) § 677.200 when invoking the emergency temporary license revocation authority of ORS § 677.205(3). Thus, asserts Plaintiff, under *Chalkboard, Inc. v. Brandt*, 902 F.2d 1375 (9th Cir. 1990), the members of the OMB are not entitled to absolute immunity.

"The prime categories of executive officials that are entitled to absolute immunity are those whose functions parallel the functions of judges and prosecutors." *Id.* at 1378. When considering absolute immunity for state actors outside of judges and prosecutors, a court must

consider whether the "officials were placed, under state law, in the functions equivalent to those of judge or prosecutor." *Id.* Oregon has a statute that provides absolute immunity to the OMB and its investigators and staff. ORS 677.335(1) ("Members of the Oregon Medical Board, members of its administrative and investigative staff, medical consultants, and its attorneys acting as prosecutors or counsel shall have the same privilege and immunities from civil and criminal proceedings arising by reason of official actions as prosecuting and judicial officers of the state.").

Oregon also has a statutory framework for OMB proceedings and license suspensions. Within that framework, ORS § 677.205 requires that the OMB may only temporarily suspend a license without a hearing if it is done "simultaneously with the commencement of proceedings under ORS 677.200." The Court declines to adopt the portion of the F&R discussing ORS §§ 677.200 and 677.205.

The OMB may only temporarily suspend a license without a hearing if it is done at the same time as commencing proceedings under ORS 677.200. Those proceedings must be "substantially in accord" with: "(1) A written complaint of some person, not excluding members or employees of the Oregon Medical Board, shall be verified and filed with the board;" and "(2) A hearing shall be given to the accused in accordance with ORS chapter 183 as a contested case." The hearing need not be "simultaneous" with the temporary suspension because ORS § 677.205 expressly allows a temporary suspension without a hearing. Thus, the only logical way to read the two statutes together is that the OMB may temporarily suspend a license without a

hearing so long as it is simultaneous with the proceedings commencing by having a written complaint of some person being verified and filed with the OMB.[1]

The OMB temporarily suspended Plaintiff's medical license on December 3, 2020. Plaintiff alleges that a notice of disciplinary proceeding or complaint against him was not filed by the OMB until April 22, 2021, months after his temporary suspension. ORS § 677.205, however, does not require that the complaint against Plaintiff be filed *by* the OMB to initiate the "proceedings." Indeed, the complaint must be filed "with" the OMB not "by" the OMB. The statute *allows* members and employees of the OMB to file the complaint, but does not *require* it. For example, if a patient files a complaint with the OMB, and that complaint is verified, the OMB may, under the terms of the statute, temporarily suspend a medical license if the OMB determines that the practitioner poses an immediate danger to the public. Thus, the mere fact that the OMB did not issue its notice of disciplinary proceedings to Plaintiff until April 22, 2021, does not mean that no complaint was filed and verified against Plaintiff before that date. Indeed, Plaintiff's allegations show that there was a complaint by someone else.

Plaintiff alleges that on July 23, 2020, the OMB notified Plaintiff that it was investigating a complaint lodged against Plaintiff regarding his research into vaccinated versus unvaccinated children. Am. Compl. ¶ 77. Plaintiff also alleges that the "answer" Plaintiff provided to the OMB regarding that complaint "did not comport with the Board's dogmatic opinion." *Id.* ¶ 81. Plaintiff further alleges that he issued a "peer-reviewed paper" about how much healthier unvaccinated children are compared to vaccinated children, and that a few days after that paper became available online, the OMB investigator "reviewed the case" with the investigative committee and

---

[1] Defendants argue that Plaintiff's contention that a complaint must be "filed" is "patently false." Plaintiff's contention, however, derives directly from ORS § 677.200(1), which requires that a complaint be "filed with the board."

the investigative committee sent the "case" to the OMB, who then temporarily suspended Plaintiff's license. *Id.* Based on Plaintiff's allegations, it appears to have been the July 23, 2020 complaint, investigation, and "case" that served as the basis for his suspension.

Even assuming no complaint was filed with the OMB as that term is used in ORS § 677.200 until the OMB itself issued its disciplinary notice to Plaintiff in April 2021, that does not resolve whether the OMB members are entitled to absolute immunity. That would simply mean that OMB members, who plainly have the statutory authority to temporarily suspend Plaintiff's medical license, would have failed to follow the proper procedures in doing so. Plaintiff argues that under *Chalkboard*, the members then would not be entitled to absolute immunity. *Chalkboard*, however, did not involve agency personnel who had statutory authority but failed to follow the proper procedures to execute that authority. In *Chalkboard*, the Ninth Circuit concluded that state law authorized only prosecutors to seek an injunction in court to summarily close day care centers and that Department of Health Services (DHS) personnel were not authorized to summarily close day care centers. *Id.* at 1379. Thus, the DHS personnel were not entitled to absolute immunity because they did not have authority "under state law, in the functions equivalent to those of judge or prosecutor with regard to [the day care center's] summary closure." *Id.* at 1378.

Here, however, *Chalkboard* does not apply to Plaintiff's claims. U.S. District Judge Ann Aiken reached the same result when she dismissed similar claims in a different case. Judge Aiken explained:

> Plaintiff's reliance on *Chalkboard, Inc. v. Brandt*, 902 F.2d 1375 (9th Cir. 1990), for the proposition that defendants' actions are not within the scope of immunity because they violated state law, is misplaced. In *Chalkboard*, the court determined that an Arizona agency did not have statutory authority to carry out an emergency closure of a day care center; that power was held by another

PAGE 5 – ORDER

> agency. *Id.* at 1378-79. The lack of agency authority in *Chalkboard* is not present in this case. Plaintiff does not dispute that the Board is authorized to investigate and discipline physicians or that it can effect emergency license suspensions. Thus, plaintiff's allegations are unlike those in *Chalkboard*; he simply alleges that the Board failed to properly adhere to its procedures in exercising its authority under Oregon law. As defendants note, plaintiff's various arguments that defendants skipped important steps in the process or omitted information from documents are not relevant to the absolute immunity inquiry. The acts of the Board in their exercise of statutory authority "are no less judicial or prosecutorial because they may have been committed in error." *Mishler* [*v. Clift*], 191 F.3d [998,] 1006 [9th Cir. 1999] (citing *Stump v. Sparkman*, 435 U.S. 349, 359 (1978)).

*Gambee v. Cornelius*, 2011 WL 1311782, at *5 (D. Or. Apr. 1, 2011).

Plaintiff also objects that the F&R does not go through the factors from *Butz v. Economou*, 438 U.S. 478 (1978), arguing that whether the OMB is subject to absolute immunity requires a court to analyze those factors in each case for each act taken. The F&R cited many cases that had found medical boards, including the OMB, making disciplinary decisions were entitled to absolute immunity. The Court disagrees that the F&R was required separately to analyze the *Butz* factors. The argument Plaintiff makes in his objection is a rehash of his argument that the OMB failed to follow the proper procedures, was thus outside its statutory authority, and therefore not entitled to absolute immunity under the *Butz* factors. *Gambee*, cited by the F&R, however, analyzed the *Butz* factors and addressed similar arguments.

**2. Absolute Immunity for non-OMB Members**

Plaintiff argues that Defendants Eric Brown, Jason Boemmels, and David Farris, who are not members of the OMB, are not entitled to absolute immunity because they did not serve in the role equivalent to judges or prosecutors. Plaintiff asserts that the F&R incorrectly treated all Defendants together in applying absolute immunity.

Defendants Brown and Boemmels were investigators for the OMB, and Defendant Farris is alleged to have been their supervisor. The Ninth Circuit generally does not apply absolutely immunity to investigatory conduct, but only to judicial or prosecutorial conduct. *See Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1115 (9th Cir. 2017) *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 842-43 (9th Cir. 2016); *Slater v. Clarke*, 700 F.3d 1200, 1203 (9th Cir. 2012).

As noted above, however, Oregon has by statute imbued OMB investigators and staff with absolute immunity. ORS 677.335(1). Judges in this district court have applied this statute to provide absolute immunity to employees other than OMB members. *See, e.g.*, *Dover v. Haley*, 2013 WL 6190165, at *3 (D. Or. Nov. 26, 2013), *aff'd*, 616 F. App'x 295 (9th Cir. 2015); *Read v. Haley*, 2013 WL 1562938, at *7 (D. Or. Apr.10, 2013). Thus, all Defendants are entitled to absolute immunity.

Plaintiff also objects to the F&R's conclusion that the Amended Complaint fails to state a claim against Brown, Boemmels, and Farris. Plaintiff argues that the F&R fails to accept as true the allegations in the Amended Complaint. For Farris, Plaintiff asserts that supervisory liability is actionable under § 1983 and that Plaintiff adequately alleged such liability. "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). The requisite showing can be established by demonstrating that the supervisor: (1) set in motion a series of acts by others or knowingly refused to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict constitutional injury; (2) had his or her own culpable action or inaction in the training, supervision, or control of his or her

subordinates; (3) acquiesced in the constitutional deprivation by subordinates; or (4) engaged in conduct that shows reckless or callous indifference to the rights of others. *Id.* at 1207-08; *see also Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018) ("The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." (citing *Starr*, 652 F.3d at 1207-08)). "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of [the plaintiff's] civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Plaintiff does not sufficiently allege *facts* supporting Farris's supervisory liability. Plaintiff simply alleges that Farris participated in, directed, or knew of and failed to prevent the "fabrication of evidence" that led to Plaintiff's alleged deprivation of rights. Plaintiff improperly alleges "simply conclusions" and his supervisory claims fail. *Barren*, 152 F.3d at 1194.

For Brown and Boemmels, Plaintiff asserts that the facts alleged in Paragraphs 96-112 regarding the alleged deficiencies in the Board's disciplinary findings are facts that apply to Brown and Boemmels. The Amended Complaint, however, alleges these facts specifically against only "the Board." The facts alleged against Brown and Boemmels are that they "wrote false and misleading allegations" against Plaintiff and that they did not interview the individuals cited in their report but instead relied on "second-hand information." Am. Compl. ¶¶ 149-51.

In the analogous criminal context, the Ninth Circuit has held that for a claim of fabrication of evidence, a plaintiff "must, *at a minimum*, point to evidence that supports at least one of the following two propositions: "(1) Defendants continued their investigation . . . despite the fact that they knew or should have known that [the plaintiff] was innocent; or (2) Defendants

used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (emphasis in original). Plaintiff does not allege sufficient *facts* to state a claim based on a fabrication of evidence.

### 3. Vagueness

Plaintiff objects that in the F&R's discussion of whether the statutes governing the procedures on medical licensing are unconstitutionally vague, the F&R does not accept Plaintiff's alleged facts as true. Plaintiff recites alleged facts that the F&R purportedly should have accepted, relating to the dangers of childhood vaccinations and the positive results of not vaccinating children.

It is unclear whether Plaintiff is bringing a *facial* or an *as applied* vagueness challenge. The alleged facts would not be relevant to a facial challenge but might be relevant to an as applied challenge. The Amended Complaint appears to allege an as applied challenge—asserting that a person of reasonable intelligence could not ascertain that Plaintiff's specific conduct was forbidden by the statutes. Plaintiff's response to Defendants' motion to dismiss argues a facial challenge, namely that the statutes do not provide any standard by which any person could ascertain any understandable standard of regulation and that the statutes allow too much discretion by the OMB.

"[A] challenged statute enjoys a presumption of constitutionality." *Forbes v. Napolitano*, 236 F.3d 1009, 1012 (9th Cir. 2000). "A law is unconstitutionally vague if it does not give 'a person of ordinary intelligence fair notice of what is prohibited' or if it is 'so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Tingley v. Ferguson*, 47 F.4th 1055, 1089 (9th Cir. 2022) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). "For facial vagueness challenges, [courts] tolerate uncertainty at the margins; the

PAGE 9 – ORDER

law just needs to be clear in the vast majority of its intended applications." *Id.* For as-applied challenges, courts "consider whether a statute is vague as applied to the particular facts at issue." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18 (2010).

For both types of challenges, the Court adopts the F&R's discussion regarding the text of the statutes and case law interpreting similar statutes. That is sufficient to defeat a facial challenge. The statutes are not vague "in the vast majority" of their intended applications. *Tingley*, 47 F.4th at 1089.

For an as-applied challenge, even accepting Plaintiff's well-pleaded factual allegations as true, the statutes still are not unconstitutionally vague. Plaintiff alleges that over the course of his medical career he came to disagree with the recommended vaccine schedule and that he believes children are healthier when they are not vaccinated. Plaintiff, however, does not allege that he does not understand that the vaccine schedule is recommended and is considered the standard of care by the medical profession or the OMB. Indeed, he alleges the opposite, that the OMB and the medical profession refuse to consider that altering the recommended vaccine schedule allegedly provides better outcomes for children. His allegations show that he understands that the statutes require that he perform under the standard of care and that he understands what the OMB and the medical profession consider to be the standard of care; he just does not agree with the current standard of care. That he does not agree with the current standard of care, however, does not render the statutes vague.

**4.  Qualified Immunity**

Plaintiff objects that the F&R misapplied qualified immunity. The F&R stated that Plaintiff alleges that Defendants violated Plaintiff's rights by investigating and disciplining him and that Defendants are statutory authorized to do so. The F&R noted that Plaintiff alleges Defendants fabricated evidence, but that such allegations are conclusory and may be disregarded.

Thus, all that is left is that Defendants investigated and disciplined Plaintiff. The F&R, therefore, recommended granting qualified immunity because no binding precedent held such conduct unlawful.

Plaintiff argues that simply because Defendants are statutorily authorized to investigate and discipline doctors does not mean that can do so unlawfully. The F&R (and this Court), however, rejected Plaintiff's conclusory allegations that Defendants fabricated evidence. That leaves only an investigation and disciplinary action with which Plaintiff disagrees and for which Plaintiff alleges he has scientific evidence to dispute. Plaintiff's disagreement with his investigation, however, does not render Defendants' conduct constitutionally deficient or not subject to qualified immunity.

### 5. Conclusion

The Court ADOPTS IN PART the Findings and Recommendation, ECF 11, as supplemented herein. The Court GRANTS Defendants' motion to dismiss, ECF 6. Plaintiff is not automatically granted leave to amend because, the Court dismisses his claims, among other reasons, based on absolute and qualified immunity. Plaintiff may file a motion for leave to amend within 30 days if Plaintiff believes he has a basis on which to file a Second Amended Complaint.

**IT IS SO ORDERED.**

DATED this 8th day of February, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge